5r 249
f118 227

WILLIAM WEST FRAZIER and another, Receivers, &c. *v.*
JAMES DICK and others.

The holder of a bill of exchange, is under no obligation to use active diligence in suing an acceptor, or any other party. He may remain passive, and forbear to sue as long as he pleases ; but he must not agree to give time to an acceptor, so as to preclude himself from suing, and thus suspend his remedy against the latter, to the prejudice of the drawer and endorsers. To make an agreement for indulgence ob-

---

Frazier and another, Receivers, &c. v. Dick and others.

ligatory, it must be for an adequate consideration. A delay, without sufficient consideration, and without taking any new security, being *nudum pactum*, will not discharge the other parties. Nor will they be discharged where the agreement, though obligatory, was made with their consent.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *Peyton*, J. W. *Smith*, and T. *Slidell*, for the plaintiffs.

L. *Peirce* and *Eustis*, for the appellants.

GARLAND, J. The defendants are sued as the endorsers of four promissory notes, drawn by Christmas & Norfleet, for $26,000, two of them payable in March, 1841, and the other two in March, 1842. There was judgment against them for $8000, with interest, being for the balance owing on the two first mentioned notes, and in their favor for the two last; it not appearing that they were presented for payment at maturity, protested, and notice given according to law. From this judgment, the defendants have appealed.

The defence rests on an exception, that the plaintiffs have no right to sue on the notes, their capacity of receivers not being legal, and their appointment not conferring any authority. On the merits, they admit, that their signature is genuine, but aver, that no notice of protest was ever given them. They allege, further, that they are discharged by the plaintiffs, or the Bank of the United States, under which they claim, having, without their consent, made arrangements with the drawers, and given them an extension of the term of payment.

The exception, as to the capacity and authority of the plaintiffs to sue, was, we think, correctly overruled by the court. The question has been definitively settled in the case of *Frazier and another, Receivers, &c.* v. *Wilcox and another*, recently decided in this court, 4 Robinson, 517.

The evidence of protest, and notice thereof to the defendants, on the two notes due the 1st—4th March, 1841, is very satisfactory. The notes due one year after, appear not to have been protested at all; the defendants were, therefore, properly discharged as to them.

The question, whether time was given to the drawers of the notes, without the assent of the endorsers, is the principal one in the cause. The law in relation to extending the term of payment

to the drawer of a note, without the consent of the endorser, and the consequences of such an act, was, after much deliberation, settled in the case of *Huie* v. *Bailey*, 16 La. 213. We then said, p. 218, " there is no obligation of *active diligence* on the part of the holder, to sue the acceptor, or any other party, and he may be *passive* and *forbear* to sue, as long as he pleases ; but he must not so *agree* to give time to the acceptor *as to preclude himself from suing him, and suspend his remedy against him*, to the prejudice *of the drawer and endorsers*. To make any agreement for indulgence obligatory, it must be for an adequate consideration. Chitty on Bills, 8th Am. ed. 441, 442, 443, 446. 3 Kent's Com. 2d ed. 111, 112. The old opinion was, that any agreement to give time, discharged the drawer and endorsers, whether without consideration, or not ; but the later doctrine is, that a delay *without sufficient consideration*, and without taking any new security, being *nudum pactum*, will not discharge other parties, if the holder has not entered into such an agreement, as will disable him from suing the acceptor. Chitty on Bills, 447." It may, therefore, be considered as well established, that the giving of time must be in such a manner or form, as will prevent the holder from suing or prosecuting an action, previous to the expiration of the stipulated period. It must be without the assent of the endorser, and for a sufficient consideration. The application of these principles, must depend upon the facts of each case. Let us now see the effect they will have on the one before us.

The Bank of the United States, being the holder of the notes sued on, one of the drawers applied to Frazier, the agent of the Bank in Mississippi, where the drawers resided, to receive payment in the notes of the Agricultural Bank of that State, which said agent agreed to receive, if paid on or before the 20th of March, 1841. On the 19th March, Christmas, the drawer, who had made this arrangement, writes from Vicksburgh to Caruthers & Co., in New Orleans, saying, that Norfleet & Christmas were owing a debt due on the 1st—4th of that month, at the Merchants Bank, in that city, which belonged to the United States Bank, and that Frazier, the agent, had agreed to receive payment in the notes of the Agricultural Bank, if paid on or before the 20th. He then says : " I wish you to see the Bank immediately, and get the time

extended; say thirty days." On the receipt of this letter, Caruthers went to the Bank, and applied to the Cashier, from whom, he says, he could get no information. Afterwards, h e saw the President, who told him, that he knew nothing of the arrangement made by Frazier, but that an indulgence of thirty days would be extended, and the notes of the Agricultural Bank received in payment, at their market value, on the 20th of March, 1841, which was a discount of from twenty-seven to twenty-eight per cent. The precise day is not shown, on which this transaction took place, but it was on or previous to the 24th of March, 1841. The witness says, that he has no knowledge as to the defendants having any knowledge of this arrangement; but Frazier being examined as a witness, says, that Christmas, and Hill, one of the defendants, partners in a commercial firm, being at Vicksburgh, he was induced to recommend to the Merchants Bank in New Orleans, the course he thought it best to pursue, for the interests of the Bank of the United States; and in the first instance, advised that the Agricultural Bank notes should be received at par. Some misunderstanding occurring about this, he, witness, wrote to the Bank to accept payment in them, if offered within a certain number of days. He had no power to make a definite arrangement, as he was not the agent for these notes. He says, that Hill conversed with him from time to time about this business, was very anxious that the notes should be paid, and never expressed any disapprobation. He always considered Hill as the acting partner of the defendants in Mississippi; and treated with him as such, in relation to the business with the Bank of the United States. He thinks, that Hill was cognizant of what was passing between Christmas and himself—is sure he was, as they often spoke of it, and never heard him make any objections. The evidence goes much into detail, but we have stated the leading facts; and the impressions which they, with the body of the testimony, make on our minds, is, that the object of the debtors was as much to induce the holders of the notes to receive payment in depreciated paper, as to get time; and that Hill, one of the defendants, was cognizant of the whole transaction.

In this case, it has been said, that the assent of the defendants

to the arrangements made with Christmas, has not been shown. It appears to us very doubtful, whether the contract entered into, was such a one as would have prevented a suit being brought on the notes before the 20th of April, 1841; but if it were, we think it is shown that Hill assented to it. He never expressed any dissent, when the arrangements were the subject of conversation in his presence, which raises a strong presumption of consent. The arrangement appears to have been entirely for the accommodation and benefit of the debtors. At any rate, they have not shown, that it was the interest of the Bank of the United States to have accepted the notes of the Agricultural Bank, instead of their own notes, or specie.

*Judgment affirmed.*