The opinion of the court was delivered by
Nicholls, O. J.
The plaintiff alleges that under a writ of ft. fa. issued from the District Court for East Carroll parish in suits Nos. 701, 705, 708, 709, 711 and 748 the sheriff of that parish had seized and advertised for sale certain property belonging to him.
*815 That he was informed that said writ was issued at the instance and under the instructions and order of Anatole J. Forstall, upon a cer-. tain pretended twelve months’ bond for $2400, which he claims to own, given for the sale of a lot of mules and other pers'onal property-sold under judgments in the above numbered suits, which said bond was executed on the 5th day of June, 1886, and held by the sheriff or some other person until the 12th day of June, 1889, when it was filed in the District Court for East Carroll in the clerk’s office, endorsed in blank by J. C. Bass, sheriff, and the writ of fi. fa. was issued upon it, and his property seized.
That said seizure was wrongful, unjust and unwarranted, because it was in violation of an express agreement upon the part of Francis M. Taylor (who acted as the agent of A. J. Forstall) with petitioner, who, petitioner was informed, believed and alleges, acted in the interest and benefit of said Forstall and in the interest and benefit of Mrs. F. M. Taylor, the defendant in the above mentioned suits.
That when the sale was made of said mules, etc., and it became necessary to give said bond, F. M. Taylor, acting as aforesaid, procured and induced the plaintiff, Purdy, to become surety thereon, with the understanding that he would not be held liable on the same if the proceeds should be held by the court to belong to Forstall and Hernandez.
That at that time there was an agreement upon the part of For-stall to sell Mrs. Taylor and Francis M. Taylor the Live Oak plantation, which Forstall had lately purchased under a foreclosure of mortgage, and to which said mules, farming utensils, etc., were attached and belonged, as claimed by Forstall, and saidF. M. Taylor purchased the same with the understanding that they would be covered by the purchase price of the sale of the plantation, and plaintiff signed said bond with said Taylor, as he understood, at the request of Forstall, to protect them from passing out of the hands of said Taylor, and taken from the Live Oak plantation; and when he signed said bond as Taylor’s security it was his understanding that Forstall' and Hernandez would look only to the property, for the purchase of which the bond was given, and not to him.
That after the execution of said bond Forstall and Hernandez were declared by a judgment of the District Court for East Carroll, upon opposition's filed in suits Nos. 701, 705, 707, 708 711 and 748, to be entitled to the proceeds of the sales made under the fi. fa. issued *816 thereon, and for which the bond was given, and in violation of said agreement of his (Forstall’s) agent he was seeking to hold him upon the bond.
That said fi. fa. was wrongfully issued upon said bond because it was not at the time the same was issued such an instrument as under the law a fi. fa. could issue upon; that it was no longer a twelve months’ bond, its' character, force and effect as such having been changed by taking additional security thereon after it had become due and should have been executed, making it really and in fact an ordinary bond or contract.
That by the acts of Forstall, plaintiff has been released upon said bond, even if he were ever liable upon it as security. That on the 5th day of June, 1887, when said bond was due and exigible, execution should have issued upon it, and the property for which it was given should have been seized and sold; but instead additional security was taken thereon and its collection extended to November following, about five months, with the distinct understanding and instruction of jplaintiff that its collection should then be enforced if he was bound upon it, which he avers he was not if it became the property of Forstall. That at that time Taylor held possession of all the stock and other property for the purchase of which the bond was given, and the amount of the bond could easily have been made by the sale of them under it; but instead of proceeding to the collection of the bond at that time, Forstall allowed the time of payment by Taylor, the principal thereon, to be extended from month to month, and year to year, without plaintiff’s consent, and in fact against his express wish and instruction, until a large portion of said property had been disposed of by Taylor and he became insolvent, and now For-stall illegally endeavors to hold plaintiff responsible therefor and require of him to make good the loss, if any, which he had sustained by his own acts; but that he has been informed and will show that the debt for which said bond was executed as claimed by Forstall has been extinguished, and really and in fact Mrs. Taylor is not indebted to him in any amount.
Alleging that the sheriff unless enjoined would sell his property under the writ, and that he, the plaintiff, had been damaged by the seizure to the amount of five thousand two hundred and fifty dollars, he prayed that the said sale be enjoined, that the sheriff and Forstall be cited, and that he have judgment in his favor decreeing him re *817 leased from any liability upon said bond — that the injunction be perpetuated, and that he have further judgment for the amount of the damages claimed.
The sale was enjoined as prayed for.
Eorstall answered, first pleading the general issue. He then admitted that he, together with Charles Hernandez, own the twelve months’ bond referred to, and averred that the same was a just and binding obligation of plaintiff, and exigible in manner and form attempted by him and Hernandez.
He admitted that he, together with Hernandez, caused the seizure of plaintiff’s property under ft. fa. issued on said twelve months’ bond, which the principal and security refused to pay. That he and Hernandez, being joint owners of the bond, had the legal right and a just cause to proceed as they did. Reserving his right to demand damages from plaintiff and his sureties on the injunction bond, he prayed that plaintiff’s demand be rejected and the preliminary injunction be dissolved.
Charles Hernandez, with leave of court, intervened in the suit, and averring that he is equally interested therein with A. J. Eorstall, for the reason that they together own the twelve months’ bond, execution on which had been enjoined, he adopted Eorstall’s answer and allegations and joined also in his prayer.
The case went to trial and judgment was rendered therein perpetuating plaintiff’s injunction and condemning defendant to pay $250 attorney’s fees.
Defendant and intervenor have appealed from the judgment.
In order to reach a clear understanding of the position of the parties, it will be necessary to make a statement of facts which are somewhat complicated.
On the 25th of January, 1884, Mrs. Lizzie M. Taylor, wife of F. M. Taylor, executed her mortgage note of that date for $5000, to her own order and by her endorsed, payable on the 1st January, 1885, with interest at 8 per cent, per annum from maturity, and secured payment of the same and 10 per cent, attorney fees in case of suit by a mortgage on her plantation, known as the Live Oak plantation, in the parish of East Carroll, with mules, etc., thereon.
On the 21st day of February, 1885, she mortgaged the same property to secure two promissory notes of $4000 each, to her own order and *818 by her endorsed, payable one year after date, with interest at 8 per cent, after maturity and 10 per cent, attorney fees in case of suit.
On December 4, 1885, a number of the creditors of Mrs. Taylor sued her, accompanying their demands for a moneyed judgment by applications for writs of attachment against her property, which writs having been granted and issued were executed, some upon the Live Oak plantation and others upon that plantation and a stock of goods belonging to her in her store at Lake Providence.
On December 8, 1885, Anatole J. Forstall, as owner of the note above described of Mrs. Taylor for $5000, instituted proceeding via executiva thereon, and under the same the Live Oak plantation and the mules, farming utensils, etc., thereon were seized.
W. G. Vincent and other attaching creditors thereupon intervened by way of third oppositions, which (as similar ones were again filed at a later period) are now simply referred to, and will be more particularly mentioned hereafter.
On the 26th April, 1885, Anatole J. Forstall, as holder of one of the two mortgage notes of $4000, and Charles Hernandez, as holder of the other note, instituted proceedings jointly via exeeutiva and the Live Oak plantation with the mules, carts, utensils thereon were seized thereunder, and under these writs it was advertised for sale. W. G. Vincent, one of the attaching creditors spoken of, who had already filed one “third opposition,” now filed another, covering the same grounds as the first.
In the petition he averred that, finding that the property originally attached by himself was insufficient to cover his claim, he had applied for and obtained an order for a second attachment, directed to the sheriff of West Carroll parish, with instructions to seize sixteen mules belonging to his debtor, which, he had been informed, were then in that parish; that before process issued Mrs. Taylor caused the property to be brought to East Carroll and placed them on the West Oak plantation for the purpose of avoiding a seizure, and with afview of permitting them to be seized under the executory process of Forstall which had been previously levied on that plantation, the object being to shelter them from his (Vincent’s) pursuit by having them embraced under said proceeding, which was a friendly suit conducted for mutual benefit of the litigants therein.
That as soon as said mules were placed on said plantation he had caused an alias writ of attachment to issue, and they were seized thereon.
*819 That soon after he had caused them to be seized they were seized under the executory proceedings and were advertised to be sold thereunder.
That since his petition of third opposition was filed on the 5th February, 1886, Forstall and Hernandez, representing themselves as mortgage creditors of Mrs. Taylor, commenced proceedings against her in April, 1886, in which they are again attempting a sale of the mules, notwithstanding said mules had been taken out of the possession of Mrs. Taylor by an attachment which was prior to the last proceedings.
That said plantation without said mules was worth more than sufficient to pay the demands of Forstall and Hernandez, by reason of mortgage or otherwise. Charging fraud and collusion between For-stall and Hernandez and Mrs. Taylor, and that the real object of the executory proceedings was to overreach and destroy his rights, and to make a fraudulent and simulated sale of the Live Oak plantation and the mules for the benefit of Mrs. Taylor; that Forstall or Hernandez or some interposed party was to buy in said plantation and mules, ostensibly for cash, but actually to allow Mrs. Taylor in her own name, her husband’s name or that of some interposed party to occupy and cultivate said plantation, and out of the crops make annual payments to Forstall and Hernandez of the small balance really due them on said mortgages, and ultimately preserve the property for the benefit of Mrs. Taylor, and attacking the claim set up by the-mortgage creditors, third opponent prayed that if Forstall and Hernandez persisted in having said sale made that the sheriff be ordered to have the mules separately appraised and separately sold from the other property seized, and ordered to hold the proceeds of their sale in his hands until further order of court; that after trial had, the ex-ecutory proceedings be decreed fraudulent and collusive; that the proceeds of the sale of the mules be ordered to be paid to opponents by the sheriff, in satisfaction of the judgment he would obtain in his attachment suit; that his rights as attaching creditor be recognized and maintained, and as beingsuperior in rank to all others as regards said mules and their proceeds.
This opposition was quickly followed by others of a similar character on the part of other creditors, and under and by virtue of them the mules were ordered to be withheld from sale under the executory proceedings, and to be appraised and sold separately, which order was subsequently carried into effect.
*820 Pending the seizure the sheriff leased the plantation and mules to F. M. Taylor, the husband of the defendant — the lease of the plantation for the year 1886, at a rental of $2000, and the mules for a period and for a rental not shown by the record.
In the meantime, and after considerable delay, the plantation was sold on the 17th day of July, 1886, on twelve months’ bond, and adjudicated to Forstall, for $10,000, he paying the sheriff the costs of proceeding, giving his twelve months’ bond for $7000, to cover the possible eventual rights of the various third opponents, and retaining the balance as mortgage creditor.
Some of the ordinary attaching creditors having succeeded in obtaining judgments on their claims, writs of fi.fa. were issued thereonj and- under them the mules were seized, and, together with some movable property, were, under those seizures, and those of Forstall and Hernandez, sold on twelve months’ credit to F. M. Taylor, for the sum of $2400, for which he executed his twelve months’ bond as purchaser, with Y. M. Purdy as security.
The issuing of the writs of fi. fa. brought about the filing of a number of third oppositions in the matter of the last sale, the different parties claiming priority of payment, among them Forstall and Hernandez.
We may say here that that litigation terminated adversely to the third opponents and favorably to Forstall and Hernandez, adjudging to the latter the twelve months’ bond, the proceeds thereof to be applied to the payment of their mortgage claims.
On the 29th November, 1886, after Forstall had become the adjudieatee of the Live Oak plantation, an agreement was entered into between Forstall and Hernandez and Mrs. Taylor, as follows:
It is agreed and understood between Mrs. Lizzie M. Taylor, of Lake Providence, La., and Anatole J. Forstall and Charles Hernandez, of New Orleans, La., that whereas the Live Oak Plantation, in the parish of East Carroll, was purchased in July, 1886, by said A. J. For-stall, for ten thousand dollars, at á sheriff’s sale thereof in the suit of Forstall and Hernandez vs. said Mrs. Lizzie M. Taylor, and whereas the parties hereto hereby appraise said property at $15,000, and verily believe that the same could be sold at that price at some .future time. The said Forstall and Hernandez both hereby agree that at any time within five years that the said Mrs. Taylor shall pay to them the amount due them, they should transfer said property to *821 her qr to any person whom she shall designate. The said Mrs. Taylor obligates herself to pay to the said Eorstall and Hernandez the amount she owes them, which amount shall be determined in the suit now pending in East Carroll, entitled A. J. Eorstall and C. Hernandez vs. Mrs. Lizzie M. Taylor, said interest to be paid annually, on the 1st day of January of each year.
. Mrs. Taylor, moreover, binds herself to pay yearly, as they shall become due, all the taxes on said Live Oak plantation. Forstall and Hernandez agree that they shall rent the said plantation and credit Mrs. Taylor with the rent on account of her said indebtedness to them. They further agree that at any time they shall find a good purchaser for said plantation, to sell it for fifteen thousand dollars, out of which amount they shall deduct the amount due them by said Mrs. Taylor, and turn over the balance to her. In case any part of this agreement is not complied with, the same to be null. Thus done and signed at New Orleans, La., this 29th November, 1886.
(Original signed) E. M. Taylor,

Agent of Mrs. Taylor.

A. J. Forstall.
Charles Hernandez.
About the time the twelve months’ bond fell due (5th June, 1887),. the litigation relative to the mules being then pending and undetermined, a question arose as to whether it should be then executed or not, and a conference took place between some of the attorneys representing the third opponents in that proceeding and E. M. Taylor. As a result of that conference execution of the bond was stayed until the issues raised in the third oppositions should be disposed of, provided J. B. Donnally should sign the bond as additional security, which was done. - Eorstall and Hernandez do not seem to have been a party to that agreement. Whether Purdy was present or not at the conference is immaterial, as he concedes in his pleadings that he consented to the extension.
No action was taken upon the bond so far as Purdy was concerned until it was filed in court and the fl. fa. issued upon it, under which the seizure was made which gave rise to the present controversy.
E. M. Taylor, who had purchased the mules, subsequently to that purchase bought one-half of a plantation in East Carroll, mortgaging the property for payment of the price.
*822 He disposed of four of these mules — not accounting to Hernandez and Forstall for the proceeds. The balance were placed by him on the property purchased, and falling under the operation of the mortgage, the proceeds of the sale thereof, when they were afterward sold in the execution of the bond as against Taylor, were adjudged to his vendor.
Referring to Purdy’s petition it will be seen that he claims that the indebtedness of Mrs. Taylor to Forstall and Hernandez (which so far as the record has not up to the present time been fixed by a personal judgment against her) was extinguished.
The basis of this claim is the action of Forstall and Hernandez relatively to the Live Oak ¡plantation after the agreement between them and Mrs. Taylor. On thi3 subject counsel of plaintiff say in their brief: “ Under the terms of that agreement Messrs. Forstall and Hernandez are now indebted to Mrs. Taylor. They agreed in said contract they would pay to Mrs. Taylor all in excess of $10,000 that they gave for her Live Oak plantation, if they could find a purchaser for said named place, provided that the sale could be made within five years from the date of the contract.
“The records show.that Forstall sold to Hernandez,both of whom were contracting parties with Mrs. Taylor. The records further show that Hernandez made Joseph E. Ransdell his agent to sell this Live •Oak plantation, and that Ransdell, as agent, has sold 919 acres of land out of the 960 tract, and that he sold it at the price of $28,894, having still left 41 acres that he has not sold.
“ Even if the sworn statement that Forstall has made is correct, he and Hernandez would owe Mrs. Taylor about $18,000 after she has paid them every cent that she owes them. The evidence shows she was in possession of Li\ e Oak plantation at the time it was seized and sold. She made and gathered a crop that year. Forstall allowed her to keep thefplace after he had it sold and he bought it. He furnished her plantation supplies that year, and it was to his interest to .assist and aid Mrs. Taylor. There was an express understanding between F. M. Taylor and Forstall that Taylor was to buy the work stock when sold, so that they would be kept upon the plantation, in order to cultivate and complete the crop they had planted. Forstall had written a letter to Taylor requesting that he would get some one to go on a bond for him if he purchased the property.”
*823 ‘ ‘ The evidence shows that in 1886, the year that she made this contract, and the same year of all these transactions, Mrs. Taylor paid the interest and the taxes on the property.”
“The following year, 1887, the plantation was rented to Dunn for the sum of $2000. This amount was collected by Forstall and Hernandez. This amount collected paid the interest on the plantation for that year, and there were about $900-over to go as a credit in the year 1888. Forstall and Hernandez then took the plantation out of the possession of Mrs. Taylor, thereby violating their part of the contract, placing it beyond the power of Mrs. Taylor.”
“ After Live Oak plantation was seized, the sheriff rented the plantation to Taylor for that year (1886) for$2000. That Taylor never paid one cent of this money to the sheriff, but the latter turned the money over to Taylor upon a written order of Forstall.”
The “records” to which counsel allude are doubtless acts of sale of the Live Oak plantation and different portions thereof from For-stall to Hernandez, and from Hernandez to different persons, but they are not in the transcript.
We now turn to the consideration of plaintiff’s contention that under certain circumstances he was not to be held liable on the bond, and that the circumstances have occurred which were to exempt him.
In a letter written by Forstall to Taylor under date of May 24, 1888, he said: “Mr. Hernandez is absent at present from the city, and, of course, under the circumstances, as he is interested with me in this matter of the Live Oak plantation, I can give you no positive answer until his return, which, I believe, will be in about a month, as he is now in Europe, but he expects to return soon.”
F. M. Taylor testified as follows:
“ I got Mr. Purdy to sign it (the bond) as obliging two parties, myself and Mr. Forstall. I told Mr. Purdy that he would run no risk, as I was Mr. Forstall’s duly authorized agent, and I showed him the power of attorney offered in evidence (from Forstall to Taylor) .
“I accepted the terms and conditions of the power of attorney and on various occasions acted by its authority. I transacted all of Mr. Forstall’s business for him in this parish — collected debts for him, authorized suits to be brought for him. I looked after his business in every particular the same as if he had been present. I brought suit against Y. M. Purdy (another suit) for him, closed out the Larch business for him, and bought the Therrel store for him — bought it in my own name, but it was virtually for him.
*824 “The cheek I gave Mr. Therrel for his store and fixtures I sent to Forstall, and had him credit Therrel’s account with it. At the time the mules were seized, Forstall had a bill pf sale for the mules. There was an agreement between Mr. Forstall and myself to wait until Hernandez should return from Europe. The letter (of May 24, 1888) was in answer to one I had written in regard to Mrs. Taylor’s business — I represented her as well as Mr. Forstall — with request that Mr. Forstall come up and settle up the business, and show what Mrs. Taylor’s indebtedness was to him. There was an agreement between Mrs. Taylor and Forstall and Hernandez — it included the Live Oak plantation. In connection with my evidence I offer document “D ” (agreement between Mrs. Taylor, Forstall and Hernandez) . The reason for extending the twelve months’ bond, I suppose, was Forstall and Hernandez were waiting until the Live Oak plantation was sold so they could make a settlement with Mrs. Taylor. I don’t know this positively, I presume this to be the case. At the time I had an understanding with Forstall about extending the time for collecting the twelve months’ bond — it was about twenty-three months after the bond had been given — the rent on execution was not issued on the bond when due. I suppose Forstall was waiting to have a settlement with Mrs. Taylor. The mules were all in my possession and I had bought additional stock and farming utensils. As agent for Mrs. Taylor I have never made a settlement with For-stall and Hernandez. I had nothing but a verbal agreement with For-stall. I represented Forstall and Mrs. Taylor at the same time. The verbal agreement between Forstall and myself was made in New Orleans. Mr. Forstall told Mrs. Taylor and myself that he would not see her suffer, but would provide for her to have S4000 or |5000 in case of failure in business on her part. I had a written agreement with Forstall (but have lost it) that in any event the mules would belong to Mrs. Taylor. The bill of sale to Forstall of the mules was given as collateral to be placed in bank by Forstall — the mules were bought by Forstall, for which he gave his check on the bank. This check was sent to the bank and in return got a bank cheek for it, which I handed Forstall. I did not get any of the proceeds of the check.
“ At the time of the sale (of the mules) I was cultivating the Live Oak plantation for my own account. I had rented the mules from the sheriff and was in possession of them at the time of the sale, and protested against the sale.”
*825 On re-examination, the following question was asked the witness:
Q. “ When you went to Mr. Purdy and asked him to give his consent for the extension of payment of the twelve months’ bond, did you not, as agent of Mr. Eorstall, represent to him that in case the Circuit Oourt, which was to be held at an early day in this parish, should decide that Eorstall was entitled to the proceeds of the twelve months’ bond in preference to the other creditors of Mrs. Taylor, then, in that event, did you not tell him that the twelve months’ bond was to be canceled?”
A. “I certainly intended to convey that impression, as I was acting for Forstall. Previous to the seizure of the Live Oak plantation the place had been in the name of Mrs. Taylor. In 1886 I rented the place from the sheriff. I agreed to pay $2000 rent, for which I gave my note. The sheriff returned the note to me on an order from Forstall and Hernandez. I never paid the sheriff for the note. -When Forstall made the contract with Mrs. Taylor they gave me an order for the return of my note. In compliance with the contract I was to pay the taxes due, which I did. I furnished the supplies to make the crop on the place that year. Forstall and Hernandez have not complied with their contract. If they had complied with their contract I think they would be considerably indebted to Mrs. Taylor. She has complied with the contract after the sale of the Live Oak. She considered that she ha-d paid the interest and taxes from the rents collected from Mr. Dunn, who had the place in 1887, and from the rent she considered there was sufficient amount to pay the interest and taxes for 1888 and 1889, from the fact that Forstall never made any demand on me as her agent for interest or taxes for 1886. There was no interest or taxes due, as this contract was not made until November, 1886.”
The plaintiff, Purdy, testifies as follows:
“ The day the mules were sold Mr. Taylor came to my place of business and asked me as a special accommodation to himself and Forstall to go on the twelve months’ bond for the mules that he had bought that day, showing his power of attorney from Forstall authorizing him to secure bonds for him. The power of attorney shown me is the same as that offered in evidence. Mr. Taylor told me it was more to Forstall’s interest to sign the bond than it was to his. He stated that he had leased the mules and implements for the year, *826 and it would be the means of destroying his prospects if they wei’6 taken off the place.”
Being asked the question whether, at the'time of the extension of the bond, when it was about to mature, Taylor had not told him, as agent of Forstall, that in case the court should decide that Forstall and Hernandez were entitled to the proceeds of the twelve months’ bond in preference to the other creditors, that then in that evexrt the twelve months’ bond was to be canceled, he answered, “ I certainly so understood it; all of the cases were decided in favor of Forstall.”
The power of attorney from Forstall to Taylor bears date the 12th of December, 1888. It gave Taylor full power and authority to represent him and to attend to all his business and concerns in the parish of East Carroll and elsewhere, of every nature and kind whatever * * * to take in payment from whom it may concern|any form or kind of movable or immovable property and dispose of the same to others by sale or otherwise; to ask, demand, have and take and by all lawful ways and means to recover and receive from whom it may concern all and every such' wares or goods, debts, property and effects whatsoever as is now or may be in his or her or their custody and possession due, owing or belonging to him, this constituent, whether by bo¡d, bill, note, book, debt account, consignment, bequest or for and by what other reason or means soever, and to that end, to whom it may concern, to adjust and settle all accounts, and upon recovery and receipt in the premises to make and give good and sufficient receipts and acquittances; to appear before all courts of law and equity, there to do, prosecute and defend as occasion shall require, or to compromise, compound and agree in the premises, by arbitration or otherwise, as the said attorney in his discretion thinks proper; also to apply for and obtain any attachments or sequestrations, injunctions, appeal and provisional seizure, give the requisite security, sign the necessary bonds and make and subscribe thereon all affidavits, and generally to do and perform all and every other matter that shall or may be necessary, and bind the said constituent as firmly as he himself might do if personally present.”
Under date of July 12, 1886, a few days previous to the sale of the plantation and of the mules, Forstall wrote to Taylor as follows:
“ Dear Sir — I confirm mine of the 9th inst. Live Oak is to be sold on the 17th, and I will be required to furnish two bondsmen. *827 Oan you specify any two parties in your city who will act in that capacity for me? If you find two who are willing]to do this send me their names at once, as the time is very short before the sale. Let me hear from you immediately and oblige,
“ Yours truly,
“ A. J. Forstall,
“ Per Bareshide.”
The defendant, Forstall, testified as follows:
“V. M. Purdy’s allegation in the injunction is not correct. F. M. Taylor did not act as my agent with plaintiff. I do not know anything as to the agreement entered into between Taylor and Purdy, but I authorized Taylor to make no such agreement, and in fact was very sorry when I heard that Taylor had purchased these articles under a twelve months’ bond, because I knew we would have trouble to make him pay. From the time I issued executory process in said suit up to the sale I had no conversation or interview with him, and certainly never authorized him to act- for me. Taylor was not my agent for any purpose whatever. I had nothing to do with said bond. I did not authorize Taylor to obtain security on said bond. I never induced Taylor to purchase said property. I never held out directly or indirectly, through Taylor or any one else, inducements to Purdy or Donnally in order to obtain them as sureties. I am not responsible for what Taylor may have told them, but if he did speak for me he was not authorized by me to do so. I never did or said anything to make Purdy understand I would not hold him on said bond.”
Opinion.
The theory upon which the plaintiff, Purdy, as security upon the twelve months’ bond, furnished by Francis M. Taylor, as adjudicatee •of the lot of mules purchased by him, in the proceedings of Forstall and others against his wife, has enjoined the seizure of his own property is that when Mrs. Taylor was threatened with ruin by the numerous attachments against her, her friend, Anatole J. Forstall, holding the vantage ground of being mortgagee of her Live Oak plantation, went to her assistance by foreclosure proceedings, under which he was to buy in that property, with the mules, carts, farming utensils thereon, at a price within his claim, and by arrangements to be perfected subsequently to his purchase he was to secure his own debt, enable her to pay out, but at the same time guard her against *828 her other creditors. That this plan was disarranged by the proceedings of the third opponents, who succeeded in obtaining a sale of the mules separately from the plantation. That this severance placing Porstall in a position of possible danger of personal liability on the twelve months’ bond, which had to be furnished at the sale, should he buy himself, inasmuch as the third [oppositions might be determined adversely to his mortgage rights on the mules, it was agreed that P. M. Taylor, the husband, should purchase the mules with the understanding that if the third opponents won their suit Porstall was to disappear entirely from any connection with that sale and Taylor was to bear all the consequences of a purchaser, but should Porstall, win the suit Taylor was to be considered as having purchased for Porstall. The mules were to be replaced on the plantation, and matters were to be placed on the same footing as if severance had not taken place and Porstall had bought both lands and mules at once under his mortgage claim. That under such a condition of things Purdy was to be released, or not looked to as Taylor’s surety on the bond. That Porstall having bought the plantation, and having won his suit as to the mules, matters had taken the shape to entitle him (Purdy) to demand that he be not] proceeded against.
In view of the friendly relations between the Taylors and Porstall, and the actual execution of an agreement between Porstall and them so nearly identical with that foreshadowed by W. G. Vincent in his third opposition, it can not be denied that plaintiff has placed his case inferentially very strongly before the court, and we were at one time disposed to take his view of the situation, but on more mature deliberation we do not think the judgment of the lower court sustaining it can be maintained for several reasons.
In the first place, the mules having been sold under the writs of a number of creditors on terms of twelve months’ credit with security, it is clear that when Taylor bid them in he became their actual owner. Their ownership in the interval between the sale and the termination of the third opposition proceedings could not be swinging in a balance to rest finally upon Taylor personally, should the third opponents have judgment in their favor, and upon Taylor as an agent of or interposed party for Porstall, should judgment go against the opponents. Taylor was undoubtedly the absolute owner of the mules, and Purdy undoubtedly his surety as such for the purchase price. We have very critically examined the pleadings and thejevidence and we *829 think that the plaintiff himself and the Taylors concede this to be the fact. Plaintiff’s contention is that, although this was the case, none the less by a collateral agreement between himself and Taylor, as agent of Forstall, he was not to be proceeded against should Forstall have judgment in his favor in the matter of the third •oppositions.
If .Taylor was the actual owner and actual debtor, and Purdy his actual security, then the claim is that their absolute obligations evidenced by a contract of so high a nature as to be executory at once on default, by fi-fa., should be done away with so far as Purdy is concerned by a side agreement.-
Such a claim as this would necessarily have to be supported by very strong evidence. We do not think it has been furnished. The side contract which plaintiff sets up rests, in the first place, solely on parol evidence, which, although permitted to be received without proper objection to the same, was, as we shall hereafter Show, of the weakest character. Taylor had been the agent of Forstall by a notarial power of attorney, antedating all these proceedings, but the agency evidently was not intended to cover a case where Taylor himself and Taylor’s wife were personally concerned — it obviously had reference to dealings with parties other than Taylor and his wife; but even were this otherwise, the powers given to Taylor in the act did not extend to making any such a contract or such arrangements as plaintiff contends for.
Again, Taylor occupied a very peculiar position in relation to all these proceedings, for even if the parties were all acting in accord they, to a certain extent, in the nature of things, had adverse interests.
Taylor claims to have represented both the creditor, Forstall, and the debtor, who was his own wife, and he was at the same time the debtor himself on the twelve months’ bond in which both Forstall and his wife had an interest. Arrangements by a person holding such conflicting interests are, to say the least, very questionable. To hold that there was such an arrangement as Purdy asserts, we have to leave the notarial act of agency, or use it only to an exceedingly limited extent, and rest our conclusions upon the actions and relations of parties, and upon parol evidence to destroy written obligations.
*830 But leaving all this aside, we do not think the testimony supports Purdy in contending that there was any agreement between Taylor and himself prior to his becoming surety, such as he now declares on. What occurred at that time is practically covered by Taylor’s testimony to the effect that he got Mr. Purdy to sign it (the bond) as obliging two parties, himself and Mr. Forstall; that he told Mr. Purdy that he would run no risk, as he was Mr. Forstall’s duly authorized agent, and that he showed him the power of attorney offered in evidence, “ and by Purdy’s testimony that when he received the power of attorney he exhibited it to his own attorney, and on his advice that he could safely sign, he did so.”
In Purdy’s own statement he says: “ The day the mules were sold Mr. Taylor came to my place of business and asked me as a special accommodation to himself and Forstall to go on the twelve months’ bond for the mules that he had bought that day, showing me his power of attorney from Forstall, authorizing him to secure bonds for him, the power of attorney being the same offered in evidence. Mr. Taylor told me it was more to Forstall’s interest to sign the bond than it was to his. He stated that he had leased the mules and implements for the year, and it would be the means of destroying his prospects if they were taken off the place.” Being asked the question whether at the time of the extension of the bond, when it was about to mature, Taylor had not told him that in case the court should decide that Forstall and Hernandez were entitled to the proceeds of the twelve months’ bond in preference to the other creditors, that then, in that event, the twelve months’ bond was to be canceled, he answered: “ I certainly so understood it;” and this same question having been asked of Taylor, he answered: “ I certainly intended to convey that impression, as I was acting for Forstall.”
We think the evidence does not show that an understanding was made with Purdy at the time of his signing the bond that under certain contingencies he was not to be looked to, and does show that Purdy’s action rested upon an examination of Taylor’s powers under the notarial act and an erroneous conclusion as to their extent, and not upon anything dehors that act. The first evidence looking to or tending toward such an understanding as plaintiff speaks of refers to a date much later than the date of sale. It refers to a time when the bond was about to mature, at which time Taylor was anxious for an extension, and obtained it with Purdy’s consent — not from Forstall *831 nor from Hernandez, but from the attorneys representing the different plaintiffs in the third opposition proceedings, which proceedings weré at that time still pending. It was those parties, and not Forstall or. Hernandez, who were pressing for execution, and it was with those parties Taylor was then dealing. It was they who exacted Purdy’s consent to the extension, and it was they who insisted upon the additional security being given upon the bond, which was secured by the obtaining the signature thereto at that time of Donnally. Taylor was clearly not acting for Forstall at that time, and Purdy had no reason to suppose that he was. If he thought proper to receive the “ impression ” that Taylor says he u intended fo convey,” he did so at his own risk, on the strength of misplaced confidence in Taylor. Even at that date matters even between Taylor and Purdy do not seem to have reached the point of any “ contract” or “ agreement ” on the subject. Purdy’s action in insisting upon what he now claims to have been a “ condition” of his consent to an extension that the bond should receive execution immediately upon the termination of the opposition proceedings shows that he considered himself as ^Taylor’s actual surety at that time, and then bound absolutely upon it, and his contention in this suit that he has been discharged because Forstall and Hernandez did not execute the twelve months’ bond at that time as against Taylor shows the same fact.
With the evidence before us we do not feel justified in accepting as established the collateral agreement for discharge which plaintiff relies on, and in making that declaration it may be well to note that through the whole of the discussion Hernandez’ rights in the premises have been utterly ignored. His rights are separate and distinct from those of Forstall. There is no pretence that he ever entered into any contract for Purdy’s discharge, and from all we can see he is prima facie, at least, a creditor of Mrs. Taylor for a much larger amount than this bond would cover.
We now consider the claim of plaintiff that time was given to Taylor by Forstall without Purdy’s consent. We have already said that to the extension of time granted at the maturity of the bond neither Forstall nor Hernandez were parties. To this extension Purdy expressly agreed. Taylor in one place in his testimony says that For-stall agreed, verbally, in New Orleans to give him time. What he says on the subject is said so loosely that we attach no importance to the statement. We think it quite likely Mr. Forstall may have, *832 without any intention of binding himself, declared his intention to •hold matters in abeyance until Mr. Hernandez should return from Europe.
A mere declaration of that character is not the granting of time referred to in Art. 3063 of the Civil Code as carrying with it the release of a surety. There is no pretence that there was ever even a “ promise ” to postpone, but had there been it would fall under the terms of Art. 1815, which declares that a positive promise that from the manner in which it is made shows no serious intent to contract creates no oh -6on.
The failure t, Tc and Hernandez to execute the twelve months’ bond prOü.p-.j at maturity did not discharge Purdy. A mere forbearance or delay in enforcing their rights did not have that effect — he could have paid the debt, and becoming subrogated to their rights he could have controlled the claim to his own satisfaction. Hennen’s Digest, p. 1541.
Plaintiff next claims that subsequently to the purchase of the Live Oak plantation by Forstall the latter and Hernandez entered into a written agreement by which Mrsv Taylor was to remain on the plan^ tation, exercise certain rights of ownership thereon (but short of ownership), and ultimately become, under certain contingencies, the owner of the property; that Mrs. Taylor had complied with all her obligations under this contract, up to a certain period, when suddenly, without right so to do, Forstall sold the property to Hernandez, and Hernandez sold the same to different parties, placing it out of Mrs. Taylor’s power to finally comply with the balance of her obligations.
That one of the clauses of this contract so broken up was that in the event Forstall and Hernandez should find a purchaser within a certain time for the plantation, and should sell it for over a certain amount, that the surplus over that amount should be paid to Mrs. Taylor — that the price on which the property had been sold nob only exceeded the amount fixed, and paid off all the indebtedness of Mrs. Taylor to Forstall and Hernandez, but left a large balance which she was entitled to receive from them.
Up to the present time Mrs. Taylor (who is no party to the present litigation) has asserted no such claim that we are aware of against Forstall and Hernandez. We can not collaterally in this suit settle or liquidate the rights of Mrs. Taylor under that contract. Purdy is ■ *833 not authorized to advance claims for or stand in judgment for her.. We can not undertake to say what the rights of parties would be were she to do so herself at some future time, and the condition of affairs should prove such as plaintiff represents.
For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same, is-hereby annulled, avoided and reversed, and that plaintiff’s demand be and the same is hereby rejected, and the injunction taken out by him be and the same is hereby dissolved, costs in both courts to be-paid by appellee.
Rehearing refused.