No. 635

First Circuit

———

O'BANION v. WILLIS ET AL.

———

(June 30, 1930. Opinion and Decree.)
(October 7, 1930. Rehearing Refused.)
(December 1, 1930. Writs of Certiorari and
Review Refused by Supreme Court.)

———

A. B. Cavanaugh, of Leesville, attorney for plaintiff, appellee.

D. D. Newman, of Leesville, attorney for defendants, appellants.

LeBLANC, J. Plaintiff sues the two defendants as indorsers on a promissory note of $150 signed and executed by J. E. Willis. The note is attached to the petition and annexed thereto as part of same. It is dated Leesville, La., January 1, 1927, is payable one year after date to the order of plaintiff, and bears interest at the rate of 10 per cent per annum, and stipulates

that an additional 10 per cent shall be paid as attorney's fees for collection, if not paid when due. Judgment is prayed for the full amount of the note, with 8 per cent interest from January 1, 1927, and 10 per cent additional as attorney's fees.

The defendants answer by averring that they were indorsers on a certain note such as described in the petition, but allege further that the 10 per cent interest stipulated is usurious, null and void. The defense of usury, however, is not urged. The answer further declares that at the time the note became due the defendants instructed the holder to proceed to collect from the maker, having good reasons for so doing, but that the latter did not follow their instruction, simply collected the interest, and extended payment for a period of one year, without either their knowledge or consent. His action, they allege, discharged them from any liability which may have existed as sureties on the note.

The district court rendered judgment in favor of the plaintiff in the sum of $150, less the sum of $30 paid on said amount, with 8 per cent interest from January 1, 1927, and 10 per cent attorney's fees. The defendants have appealed.

Two questions present themselves: First, was there an extension granted to the maker of the note and, second, if there was, did the defendants consent to it, for, if they did not, the extension given without their consent had the effect of discharging them from their obligation?

"The prolongation of the terms granted to the principal debtor without the consent of the surety, operates a discharge of the latter." Revised Civil Code, article 3063.

It seems to be well settled now that, in order to constitute an extension of the terms of payment of the obligation which would release the sureties, there must have been an agreement between the obligor and the obligee based on a sufficient consideration, by which the obligee has precluded himself from taking action against the obligor during the period of the extension. Such agreement, if not reduced to writing between the parties or made in a manner equally as positive and definite, can be implied from their actions and the circumstances attending the transaction between them.

In this case, the evidence discloses that both before and after the note was due one of the defendants, Dr. Willis, urged the plaintiff to collect the note, as both he and his co-indorser were aware that the maker was soon to leave the state and the jurisdiction of the court, and they wanted to protect themselves in case it became necessary for them to do so. It was only after the maturity of the note that the plaintiff accepted $30 from the maker in part payment. It is true that, in answer to the question whether or not he granted additional time within which to pay the balance, he says he did not, but he qualifies his denial by saying:

"I accepted the $30.00 payment on the note and him promising to pay me in full as soon as he could, in thirty or sixty days, he said he would pay the balance of the principal."

This answer is then followed by another question whether or not he accepted the $30 payment on those conditions, to which he answers:

"Yes sir, he paid me $30.00 after I reported to Dr. Willis that the note was unpaid and he said 'I'll pay you the rest just as soon as I can, in thirty or sixty days I'll take up the rest.' "

Again we find him saying, in relating a further conversation he had with Dr. Willis:

"I went back and told Dr. Willis he had paid $30.00 on it and agreed to pay the rest in thirty or sixty days."

Surely there is sufficient evidence, coming from the testimony of the plaintiff himself, to justify the conclusion that there was a meeting of the minds of the two parties which constituted, if not an express, at least an implied, agreement between them that the time fixed for the payment of the note had been extended for a period of at least thirty days. Was that agreement supported by a consideration? We think it was. The payment by the maker of the note and the acceptance by the holder of the $30 was the consideration, without which it is reasonably certain that there would have been no extension granted by the holder. Likewise there would have been no payment of the $30 by the maker without the promise of the holder to extend. If, as is generally held, the payment of interest is a sufficient consideration for the extension of an obligation, a fortiori, the payment of a substantial amount over and above the amount of interest due should also constitute a valid consideration, for, as a matter of law, from the amount paid on account the interest which is due is the first thing credited on the note.

"The debtor of a debt, which bears interest or produces rents, can not, without the consent of the creditor, impute to the reduction of the capital any payment he may make, when there is interest or rent due. "Every payment which does not extinguish both the principal and the interest, must be imputed first to the payment of the interest." Revised Civil Code, article 2164.

The agreement between the maker and the holder of the note in this case was not the mere gratuitous indulgence or forbearance on the part of the holder not to force collection without fixing a definite period and without the giving of any consideration, as we find was the case in some decisions, notably John M. Parker & Co. v. Guillot et al., 118 La. 223, 42 So. 782, and cases therein cited, but it was a valid and binding agreement during the life of which plaintiff had precluded himself from suing the maker of the note. As such was the situation, if either of the sureties had paid the holder after the part payment had been made and the extension granted, he could have exercised no greater right than the holder of the note, and would have been successfully met by the same plea of prematurity on the part of the maker. The payee, being the absolute owner of the note, may enter into the agreement of extension either before or after maturity, and the surety is not in a position to protest, but at the same time he cannot without the concurrence of the surety make any agreement to the prejudice of the latter.

"There is no obligation of active diligence, in the holder of a note, to sue the maker or any prior endorser, and he may forbear to sue as long as he pleases; but he must not agree to give time, so as to preclude himself from suing him, and suspend his remedy against him to the prejudice of the endorser. Chitty, 371.

"The holder of the note, who intends resorting against his endorser, must retain the faculty, on receiving his payment from the latter, to transfer him all his rights, absolutely unimpaired, against the maker.

"By doing an act which impairs this faculty, the recourse against the endorser is forfeited, and no circumstance can restore it without the endorser's concurrence." Millaudon v. Arnous, 3 Mart. (N. S.) 596."

This brings us now to the next question in the case: Did the sureties consent to the extension granted by the payee? It is not difficult to dispose of this point, because the evidence shows that, not only they did not consent to it, but there is serious doubt that they knew anything

about it. They both testify that they could not have consented to the extension, as they had no knowledge of it, and we find no contradiction of their testimony in the record. In the absence of any consent to or concurrence on their part in the agreement of extension, they are discharged from liability.

We find in Freeman v. Profilet, 11 Rob. 33, a case which is very similar in almost every respect to the one here presented. Because we find the following language in the opinion so pertinent, we quote at length:

"It seems evident from the facts shown that the plaintiff, on receiving a payment of $2,000 from the drawer of the draft sued on, agreed and consented to give him further time to pay the balance. The prolongation of such time was to be extended until the crop of the next season was realized, that is to say, about one year longer; and this consent to wait one year was given without consulting the defendant. It cannot be doubted that the plaintiff was bound by his agreement, as his consent had been given in consequence of the payment; and that if he had sued Lapice before the expiration on the time allowed, the latter would have successfully opposed to him the exception, that the suit was premature. The payment of nearly one-half of the claim made by a man who appears at that time to have been greatly involved, who had his residence in another State, or at least transacted his business there, and against whom a suit would not have been available by a man who, perhaps, from the procrastination of judicial proceedings from one State to another, would have been enabled to delay the final collection of the claim for a number of years, was, in our opinion, a sufficiently valuable consideration for the prolongation of time granted to him for the payment of the balance. The object of the plaintiff in giving the delay, was clearly to receive the $2000 offered by the drawer—to obtain his share of the money which the debtor had raised and intended to divide among his creditors; and as we may fairly suppose that he would not have granted him any further time to pay the debt, if he had not been informed that a payment of a large portion thereof was to be made if he would allow the delay, it results necessarily that such delay was given in consequence and in consideration of the partial payment, and that the plaintiff was bound to wait until its expiration. We have repeatedly held that if a creditor, by giving a further delay to pay a debt, enters into such an agreement as will disable him from suing the principal debtor, the surety will be discharged; and that the giving further time to the drawer of a note, without the assent to the other parties thereto, has the effect of discharging the latter from liability."

We feel satisfied that the law of this case can be applied in the case before us for consideration in favor of the defendants, and that they are entitled to a reversal of the judgment rendered against them in the district court.

For the foregoing reasons, it is now ordered that the judgment of the lower court be, and the same is hereby, annulled, set aside, and reversed, and it is further ordered that there be judgment in favor of the defendants and against the plaintiff dismissing his suit at his cost in both courts.

ELLIOTT, J. (dissenting). I think it a proper deduction, from what J. L. O'Banion says, that, when J. E. Willis paid him $30, promising at the same time to pay the balance due on the note within thirty or sixty days, Willis understood from plaintiff that plaintiff would in consideration of the payment wait on him for thirty or sixty days for the balance, that such was the tacit understanding between them. But I think the delay which it was understood the maker was to have amounted to nothing more than forbearance; that the plaintiff could have sued if he had been so disposed, and, if the indorsers had paid the note, they could have also proceeded against

the maker to compel him to recoup them for the amount thus paid on his account.

The $30 was paid as a credit on the note; there was no actual consideration for an extension. Clause 6, sec. 120, Act No. 64 of 1904, which provides: "By any agreement binding upon the holder to extend the time of payment," is the law of the present case, and not Revised Civil Code, article 3063, on the subject of suretyship. The Act No. 64 of 1904 is the common law or general mercantile law on the subject of bills and notes, and under which an agreement to extend the time of payment is not binding on a holder, unless a consideration is received for the extension.

The authorities on which the majority of the court depend are old cases and in conflict with cases also old and also with later jurisprudence on the subject.

In Dubuch v. Goudchaux, 6 La. Ann. 780, jurisprudence on the subject was reviewed, conflicting authorities overruled, and the principles announced in the cases Huie v. Bailey, 16 La. 213, 35 Am. Dec. 214, and Frazier Dick, 5 Rob. 249, were reaffirmed.

There are two cases, both reported in the first annual, which I think must be looked on as superseded by the Dubuch case. The Dubuch case is in harmony with McLemore v. Powell, 12 Wheat. 554, 6 L. Ed. 726, and Purdy v. Forstall, 45 La. Ann. 814, 13 So. 95, and the latter case, Parker & Co. v. Guillot, 118 La. 223, 42 So. 782, in all of which a consideration for an extension was deemed necessary.

I find in R. C. L., subject "Bills and Notes," that such is the rule in construing the law quoted, Act No. 64 of 1904, in the other states.

The indorsers, having enabled the maker to get credit, should not be discharged from their liability as indorsers unless the holder of the note does some act which has precluded him and has also precluded the indorsers from suing the maker for a specified time, and I do not think that such a preclusion exists without a consideration for same having been received.

The judgment appealed from is in my opinion correct, and should be affirmed. I therefore respectfully dissent.