LANDRY, Judge.
From a judgment in favor of Fireman’s Fund Insurance Company (Fireman’s) casting defendant E. R. Richard in the sum of $2,025.00 on a written surety contract wherein Richard agreed to pay the debt of a third party, defendant has appealed. We are in accord with the judgment of the lower court and affirm the decision rendered.
Except as herein otherwise indicated, the salient facts attending this lawsuit are undisputed. It is shown that a Mrs. Sylvia Veronica Stacey became indebted to Fireman’s as a result of her embezzlement of funds of a former employer having no connection with the present litigation. Fireman’s, surety on a fidelity bond issued Mrs. Stacey’s prior employer, made good the amount of her defalcation and thus became subrogated to the employer’s rights against the errant employee. Subsequently, Mrs. Stacey became associated with defendant Richard who owned a cleaning and pressing establishment in Houma, Louisiana. Upon being advised by local police authorities of an outstanding warrant for Mrs. Stacey’s arrest on embezzlement charges, defendant discussed the situation with Mrs. Stacey who agreed to a compromise settlement of her obligation to plaintiff herein. Negotiations led to the confection of a contract wherein Mrs. Stacey acknowledged an indebtedness to Fireman’s in the amount of $2,200.00, which she agreed to pay in monthly installments of $100.00 commencing May 1, 1962. Appended to said document is a surety agreement signed by defendant, Richard, *97 the pertinent portion of which reads as follows :
“(A) Should Sylvia Veronice (sic) Stacey default in the above agreed monthly payments of One Hundred Dollars ($100.00) on the first day of each month during- the payment period, then endorser, E. R. Richard, P. O. Box 950, Houma, Louisiana, upon written notice form (sic) Firemans Fund Insurance Company, will make up such payment within five days of notification.
(B) Should Sylvia Veronica Stacey default in payment of said note for a period of three (3) consecutive months, and endorser be notified in writing of such default, then it would and will become the duty of said endorser, E. R. Richard, to assume the monthly payments of One Hundred Dollars ($100.00) until the amount past due and/or payable he paid in full according to terms agreed upon by Sylvia Veronica Stacey and Firemans Fund Insurance Company.
(C) Be it therefore understood and agreed that endorsers liability is pending and predicated upon the terms and conditions set forth in a letter dated December 4th, 1961, addressed to Mr. Frank Gibbs with copies sent to Messers (sic) Foster and Edge of Firemans Insurance Company. Should the conditions as set forth in that letter be met, then endorser’s liability is recognized as being in full force and agreement.”
On May 4, 1962, Mrs. Stacey’s first payment in the form of a check for $100.00 was received by Fireman’s but was subsequently returned by the drawee bank as the drawer’s account was insufficient to pay said amount. In June, 1962, Mrs. Stacey sent Fireman’s a money order in the amount of $100.00 to cover the check dishonored upon presentment for payment. Thereafter Mrs. Stacey made two payments of $37.50 each on her obligation to Fireman’s making her credits total $175.00. In September, 1962, Mrs. Stacey left Houma, Louisiana, and concerted efforts by both plaintiff and defendant to locate her failed to reveal her whereabouts. By letter dated November 14, 1962, plaintiff advised defendant that plaintiff would be compelled to look to defendant for payment pursuant to the here-inabove mentioned surety contract.
Appellant’s contentions of error present two basic issues for determination. First, appellant maintains the trial court wrongly rejected his claim that an extension or extensions of payment dates were granted Mrs. Stacey without appellant’s knowledge or consent thereby releasing appellant from liability under the indemnification agreement. Secondly, that plaintiff violated the terms of the surety contract sued upon. In this latter regard, we understand appellant’s position to be that the agreement was vitiated by plaintiff’s failure to give written notice of each monthly default as provided in Paragraph A.
Plaintiff counters these arguments by denying that any extension or extensions of payments were granted. In this regard appellee acknowledges indulgence or forbearance on its part in collecting past due installments owed by Mrs. Stacey but that no extension either express or implied was ever granted the prime obligor. Appellee also contends that it gave the notice required to effect defendant’s obligation under the contract, namely, written disclosure of Mrs. Stacey’s delinquency respecting three consecutive monthly installments as called for in Paragraph B.
Both parties hereto agree that the law of the instant case is stated in O’Banion v. Willis, 14 La.App. 638, 129 So. 440, to the effect that to constitute an extension of time which releases the surety of his obligation, there must be an agreement between obligor and obligee whereby, for sufficient consideration, the obligor fore-goes his right of action against the obligee during the extension period. The litigants likewise agree that such an extension need not necessarily be express but may be im *98 plied from the circumstances attending the transaction between obligor and obligee. Since we are in complete agreement with the parties regarding the rules of law pursuant to which this matter must be resolved, it follows that, as respects this issue, the question is one of fact.
Appellant does not contend that a written extension' was granted by Fireman’s but in effect maintains acceptance of partial payments by Mrs. Stacey constituted an extension of time.
The record discloses only that two payments of $37.50 each were made by Mrs. Stacey and accepted by plaintiff. Nothing indicates payment was deferred by plaintiff with the thought that for a specified time plaintiff would take no legal action to enforce Mrs. Stacey’s obligation. Not only does plaintiff’s representative specifically deny such intention but subsequent events also support plaintiff’s view. It appears that numerous telephone conversations were had between plaintiff and defendant regarding Mrs. Stacey’s delinquency. So far as the record shows, at no time did plaintiff agree to a moratorium regarding any particular installment. Rather it appears plaintiff was constantly concerned with collecting the arrearages due. On July 14, 1962, plaintiff addressed a letter to Mrs. Stacey (a copy of which was sent defendant). The communication reminded Mrs. Stacey that prompt payment of installments was of the essence of the agreement and that at least partial payment was expected within the next few days of two installments then due and unpaid. To the copy sent defendant, plaintiff appended a notation to the effect that it had been advised by Mrs. Stacey she was two months delinquent due to illness which necessitated her hospitalization.
The difference between indulgence which does not affect the release of the surety and an extension of time which terminates the surety’s obligation is defined in the O’Banion case, as follows:
“The agreement between the maker and the holder of the note in this case was not the mere gratuitous indulgence or forbearance on the part of the holder not to force collection without fixing a definite period and without the giving of any consideration, as we find was the case in some decisions, notably John M. Parker & Co. v. Guillot et al., 118 La. 223, 42 So. 782, and cases therein cited, but it was a valid and binding agreement during the life of which plaintiff had precluded himself from suing the maker of the note. As such was the situation, if either of the sureties had paid the holder after the part payment had been made and the extension granted, he could have exercised no greater right than the holder of the note, and would have been successfully met by the same plea of prematurity on the part of the maker.”
We unhesitatingly conclude, as did the trial court, that circumstances of the instant case merely disclose plaintiff’s gratuitous forbearance for an unspecified time as differentiated from an extension for a definite interval predicated upon consideration paid therefor.
Appellant’s contention that he was released from his obligation because of improper notice is apparently based on the claim that appellant was not given written notice of each monthly defalcation. This position is without merit.
It is clear that the notices required by Paragraphs A and B of the contract herein sued upon give appellee an option in enforcing payment against appellant. Paragraph A in effect stipulated that upon default of any single installment plaintiff could demand payment thereof from defendant upon written notice of such ar-rearage. Mere default did not make notification of defendant obligatory. In plain language it is stated that defendant would become liable for the installment only upon written notification of delinquency. On the other hand, Paragraph B envisions circumstances whereunder defendant would be *99 come Hable not for one installment but for the entire balance due. The notice required to effectuate appellant’s liability for the entire balance was tendered in strict compliance with the terms of the agreement.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.