152 So. 556

**JOHNSON v. WILLIAMS et al.**

No. 32531.

Jan. 2, 1934.

Rehearing Denied Jan. 29, 1934.

Lee, Gilmer & Lee, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellees.

ODOM, Justice.

Leon Johnson and Ray Williams entered into the following written agreement on January 11, 1927, to wit:

"State of Louisiana, Parish of Caddo.

"This agreement made and entered into on this the 11th day of January, 1927, by and between Leon Johnson, hereinafter referred to as lessor, and Ray Williams, hereinafter referred to as lessee;

"Lessor contracts and agrees to lease and let unto lessee, and lessee contracts and agrees to accept a lease on the following described property, to-wit:

"The front 50 feet of the North 18 feet of that certain building located at #3309 Line Avenue, formerly occupied by lessor as a delicatessen.

"Lessee shall have the right to enter on said leased premises at once for the purpose of making such alterations and repairs as may be necessary to render the leased premises suitable for the purpose of carrying on a floral business.

"The terms of said lease shall be as follows: °

"Lessee shall agree to pay to lessor a monthly rental of Sixty-five and no/100 ($65.-00) Dollars, payable promptly on the fifteenth of each month in advance at the Commercial National Bank, Shreveport, Louisiana.

"Said lease shall become effective on January 15, 1927, and shall remain in force until August 31, 1934.

"Lessee shall not sublet said premises without the written consent of the lessor.

"The purposes for which said premises are to be leased is the operation of a flower shop.

"Lessor shall agree to keep his lease on said premises in full force and effect during the entire term of said lease, or until August 31, 1934.

"Lessor agrees that he will execute a lease on said premises under the above terms and conditions in favor of lessee or in favor of a corporation to be organized by lessee and his associates for the purpose of carrying on said business.

"In witness whereof, the parties hereto have hereunto signed their names on this the 11th day of January, 1927.

        "Leon Johnson
        "Ray Williams
           "By Ernest L. Blue, Agent.
"Witnesses:
  "Leroy Johnson
  "S. J. Nolton."

This written agreement indicates, and the record discloses, that Ray Williams contemplated, at the time it was entered into, the organization of a corporation which would occupy the premises described, as a flower shop. The corporation was organized a few days later under the name and style of the "Blossom Shop, Inc.," with Ray E. Williams, C. F. Pinson, and Ernest L. Blue as incorporators, with Williams as president.

The incorporators made and filed with the charter the following instrument:

"List of property received in exchange for capital stock of 'The Blossom Shop, Incorporated.'"

"Contract of lease building located at #3309 Line Avenue, dated January 11th, 1927, and this day assigned to this Company by Ray E. Williams. Said lease being for the following term, to-wit: From January 15th, 1927, to August 31st, 1934, and providing for a monthly rental of Sixty-five and no/100 Dollars ($65.00).

"Value, $1100.00.

"We, the undersigned, being all of the directors of 'The Blossom Shop, Incorporated,' hereby certify that the above and foregoing is a correct estimate of the value of the property listed therein.

"Done and signed at Shreveport, Louisiana, in the presence of the undersigned competent witnesses, on this the 25th day of January, 1927.

        "Ray E. Williams
        "C. F. Pinson
        "Ernest L. Blue
           "Directors.
"Witnesses:
  "T. W. Amundsen
  "E. M. Ferrand."

The Blossom Shop, Inc., immediately took possession of the above-described premises

and expended considerably more than a thousand dollars in making repairs and betterments. It paid to Leon Johnson the first month's rent in advance and continued to pay the monthly rentals and occupy the building until February 15, 1932, on which date it vacated the building and refused to pay further rentals.

The building remained unoccupied until April 25, 1932, or a period of two months and ten days, when Johnson obtained another tenant at $50 per month, $15 less than he had been receiving from the former tenants.

Johnson, the plaintiff, sued Ray Williams and the Blossom Shop, Inc., for $574.66, the claim being itemized as follows:

Loss of rent on building from February 15 to April 25, or two months and ten days, at $65 per month, amounting to $151.66.

Diminution of rent on the building of $15 per month from April 15, 1932, to August 31, 1934, a period of two years four months and six days, amounting to $423.

The trial judge, for reasons set out in his written opinion, rejected plaintiff's demands. He appealed to the Court of Appeal, Second Circuit. That court affirmed the judgment of the district court and adopted the written opinion of the district judge as its own.

Whereupon the plaintiff applied for writs, which were granted, and the case is now before us for review.

1. The contract entered into between Leon Johnson and Ray Williams on January 11, 1927, copied in full above, is not itself a lease contract, but an agreement to lease as shown by its express terms. It is stipulated in the last clause thereof that "the lessor agrees

that he will execute a lease on said premises *under the above terms and conditions* in favor of lessee or in favor of a corporation to be organized by lessee and his associates for the purpose of carrying on said business."

The contemplated written document was never executed. Johnson never proposed to execute it and was never called upon to do so. But the corporation organized by Williams, as contemplated, took possession of the building on January 15, 1927, repaired and altered the premises at considerable expense, occupied it for more than five years, and paid the monthly rentals, all in exact accord with the terms and conditions set out in the written agreement between Johnson and Williams, which terms and conditions were to be incorporated in the contemplated lease contract.

It will be observed that in the assignment of the contract by Williams to the corporation, it was referred to and treated as a lease contract. It is listed as property in the schedule filed by the incorporators and is referred to as "contract of lease, building located at #3309 Line Avenue, dated January 11, 1927, this day assigned to this Company by Ray E. Williams."

The ground on which the district court and the Court of Appeal rested their judgments rejecting plaintiff's demand is that inasmuch as the agreement entered into by Johnson and Ray Williams contemplated that a lease contract should be reduced to writing, which was never done, either party was at liberty to withdraw at any time.

The general rule, settled by authority, is that where parties contemplate that their final agreements are to be reduced to writing

and that the existence of the contract between them shall depend upon its final reduction to writing, the reduction of them to writing is necessary to the perfection of the contract. This is upon the theory that in such cases the final agreements are held in suspense until the written instrument is signed.

■ But that rule finds no application in a case like the one here presented. The rule which controls this case is that an agreement to lease designated property for a specified term and a stipulated monthly rental, all understood and agreed to by the parties, creates the relation of landlord and tenant between the parties when followed by use and occupation of the premises as contemplated.

Johnson and Williams reached a complete agreement concerning a lease on certain property for a specified term at an agreed rental. This agreement was reduced to writing and signed by the parties. By it Johnson agreed to lease to Williams or to a corporation to be organized by him, designated property at a stipulated monthly rental for a term specified. All the details were agreed upon and set out in that written instrument. That instrument was assigned by Williams to the corporation organized by him and of which he became president. The corporation had a right to demand that the lease contract be reduced to writing, but made no such demand. On the contrary, it accepted the contract with full knowledge of all its provisions. It took possession of the property and held it for more than five years as tenant, paying the rent all the while—all in exact accord with the written agreement.

Under such circumstances neither Williams nor the corporation can be heard to say now that there is no binding contract of lease merely because the lease contract was never reduced to writing. By taking possession of and using the property as they did, defendants waived their right to have the lease contract reduced to writing. If it be conceded that the original agreement was inchoate and that it was contemplated that either party might withdraw, the right to withdraw ceased when the proposal was accepted and executed. The agreement which the parties entered into ripened into a perfect and binding contract of lease when carried out by them in every detail. Their conduct shows unmistakably that they did not intend that the reduction of the contract to writing should be necessary for its completion, and if they did, that formality was waived. A written instrument to complete the contract of lease was apparently never thought of after the original instrument was signed, and the contract was taken over by the corporation. At least, it was never mentioned by the parties. But all parties acted upon and executed the agreement as though a written contract of lease had been entered into.

A similar situation was presented in the case of Montague v. Weil & Bro., 30 La. Ann. 50. There the defendants were occupying a store building belonging to plaintiff as tenants. An agreement for a lease on the same property for another year was entered into, and it was agreed that the contract for the new lease was to be reduced to writing. Plaintiff prepared the contract, which defendants agreed to sign but never did sign. Defendants, however, did occupy the property

after the expiration of the old lease and paid one month's rent. Later plaintiff was notified that defendants would abandon the property. Whereupon plaintiff sued for the amount of rent agreed upon for the new lease and provisionally seized the contents of the store. Plaintiff's suit was maintained, the court saying:

"The intention of the parties here nowhere appears to be to make the existence of the lease depend upon its formal confection, and the signing. On the contrary the payment of the November rent under that lease is evidence that they regarded it as complete, for if the store was held under the old lease, a hundred dollars should have been paid instead of seventy-five. The defendants, both by words and conduct, induced the plaintiffs to believe that they regarded the new lease as binding and complete, and it is a sound principle of law, as well as of morals, that where one by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

In Coffee v. Smith et ux., 109 La. 440, 33 So. 554, 555, defendants agreed to lease to plaintiff, for a period of six months, certain property to be used as a boarding house. All the details were agreed upon, and it was understood that a written contract of lease should be drawn and signed, although such was never done. The plaintiff remained in possession of the house for some time and paid one month's rent in advance. She abandoned the house and later brought suit against defendants, the owners of the property, for damages resulting from alleged slanderous remarks made about her by defendant. Defendants reconvened for the amount due as rent. One of the grounds on which Mrs. Coffee resisted the rent claim was that "she had never rented the property, never having signed the written lease." The court held that Mrs. Coffee was defendant's tenant, though, said the court, "We think she was under the impression that until she signed the written act of lease she was under no obligations to, the defendant other than for the rent for the month which she had paid in advance."

Paragraph 2 of the syllabus written by the court in that case reads as follows:

"Plaintiff held to have been the tenant of the defendant though it was in contemplation that, after the parties had completed the contract, a written instrument should be signed."

In Knights of Pythias v. Fishel et al., 168 La. 1095, 123 So. 724, 725, suit was brought to recover damages for the breach of a contract to lease. An exception of no cause of action was filed by defendants, the basis of which was that the contract sued on was only an agreement to lease and that defendants had a right to withdraw from it at any time before the contemplated lease was signed. The court found as facts: First, that the agreement to lease was full and complete, the parties having agreed upon all the terms which were to be embodied in the contemplated contract of lease; and, second, that defendants had acted on the agreement "by having the plans prepared for the making of the improvements and alterations and submitting the plans to plaintiff for having

the contract let for making them," and that plaintiff had acted upon the agreement "by letting the contract to make them."

The court then said: "Certainly, neither plaintiff nor defendants would have gone so far had either considered that there was something yet to be agreed upon, which either desired should enter into the contract. We therefore conclude that, at the time the agreement to enter into the lease was signed, both parties considered that all the terms and provisions of the lease had been agreed upon, and as those terms and provisions were sufficient to constitute the contract to be executed one of lease, we think that plaintiff discloses a cause of action for breaching the contract to sign the lease."

While this was a suit to enforce an agreement to lease and not one on a lease contract, the opinion clearly enunciates the rule that where parties enter into an agreement to lease, and act upon the agreement, neither party is at liberty to withdraw on the pretext that a contract of lease was never reduced to writing, although such was contemplated.

In the case at bar the agreement to lease was complete. There was nothing left to be agreed upon. The contemplated lease contract was to embody the identical stipulations contained in the written agreement to lease. The agreement to lease was carried out, acted upon to the letter, and thereby became an executed contract. The defendant is as firmly bound as if the contract contemplated had been reduced to writing and signed.

For the reasons assigned the judgment under review is reversed and set aside, and it is now ordered and decreed that there be judgment in favor of plaintiff, Leon Johnson, and against the defendants, Ray Williams and the Blossom Shop, Inc., in the sum of $574.66, and all costs in both courts.