WHITE, Judge
(dissenting).
I have hesitated to differ from my colleagues in the disposition of this appeal as I am well aware of the importance of adequate records for appellate review. From the transcript before us, however, it appears to me that the essential facts stand out in bold relief and are sufficiently cogent to justify a remand of this cause for the correction of error and the entry of a new decree free of equivocation and uncertainty.
On February 27, 1960 Pearl Olds paid to John Widmeyer $4200.00 covering one month’s rent and security for six months’ additional rent on a one year lease of the Pink Flamingo Motel in Pompano Beach, the term to begin May 1, 1960 with renewal option. During the interim between the aforesaid dates Pearl Olds declined to execute the contemplated formal instrument evidencing the lease contract. She retracted, declined to take possession of the premises and demanded return of the full $4200.00. Her demand was refused. She then sought and obtained, by declaratory decree of January 30, 1961, a determination that she had incurred no contractual obligation to the defendant and was entitled to full restitution less a small equitable deduction. I cannot subscribe to an affirmance of this decree.
The plaintiff delivered her $4200.00 check to the defendant prior to her departure on a trip to New York. The defendant concurrently handed the plaintiff a memorandum receipt as follows:
“Feb. 27-60
“Received of Pearl Olds $4,200.00 Four Thousand Two Hundred Dollars as 1st months Six Hundred Dollars per *827 month Rent for May 1st and $3,600.00 Rent Security for 6 months. One year lease, and option for five years — lease to be made to Pearl M. Olds.
“s/ John Widmeyer”
The defendant accordingly caused to he prepared a written lease in conventional form and mailed it to the plaintiff who refused to accept it and demanded return of the $4200.00. During the interim letters were delivered to the motel addressed to her as “new manager.” On May S, 1960 she wrote, offering no reason for rejecting the lease:
“May 5, 1960
“Dear Mr. Widmeyer:
“This is to notify you that any relation of Landlord and Tenant which I may have with you by virtue of our previous negotiations for leasing your motel, which I believe is the property at the above address and referred to as The Pink Flamingo Motel, be and the same is hereby terminated.
“This notice is given without any admissions or assumptions of any liability on my behalf that I am or might be a tenant or lessee with you as a result of our previous dealings. It is the purpose of this notice to terminate any tenancy, including a tenancy at will, that might be construed or determined to have existed between us, the existence of which is hereby denied by me.
“Demand is hereby again made for the return of the $4,200.00 delivered to you.
“Pearl M. Olds”
(Emphasis added)
By order of November 15, 1960 designated “final decree,” it was held that there was no valid lease agreement between the parties but only a memorandum to enter into a lease in contemplation of a formal rental agreement. Somewhat equivocally, however, jmisdiction was reserved to determine whether the defendant sustained crdamages>> as a result of the plaintiffs failure to complete the rental agreement. After a later hearing the chancellor on January 30, 1961 entered a “final decree” adjudging that the plaintiff recover from the defendant the amount of the deposit but allowing the defendant $135.00 expenses in salary to the motel manager and cost of preparing the proposed lease instrument. This last decree evidently expressed the chancellor’s ultimate conclusion that there was absolutely no obligatory agreement between the parties, so the $135.00 expense allowance was merely an equitable gesture.
According to the defendant the decree of January 30, 1961 was the true final decree which he has seasonably appealed. Conversely it was urged on behalf of the plaintiff that the previous unappealed order of November 15, 1960 was the final decree since it purported to adjudicate the basic rights of the parties. The plaintiff contended, moreover, that there was no error in the “final decree” of January 30, 1961. The order of November 15, 1960 was in my opinion mislabeled “final decree” since it reserved jurisdiction to determine defendant’s damages. As stated in 2 Fla.Jur., Appeals, § 43, pocket part:
“A reservation of jurisdiction in a decree contemplating the further exercise of judicial labor in regard to questions unsettled in the case makes the decree interlocutory.”
and in 19 Fla.Jur., Judgments and Decrees, § 463, the text states:
“Once having obtained jurisdiction, the court retains it until there is a final disposition of the cause * * * Until the rendition of a final adjudication, the interlocutory judgment or decree remains within the control of the court.”
In Bancroft v. Allen, 1939, 138 Fla. 841, 190 So. 885, 887 the Supreme Court of Florida said:
“The rule which seems to furnish the best criterion in drawing the dis *828 tinction between interlocutory and final decrees is that a decree is final where nothing more remains to be done in the cause, as distinguished from beyond the cause. A decree is interlocutory where it leaves any question in the cause open for future judicial determination, and is final when it fully decides and disposes of the whole merits of the cause, and leaves no further questions therein for the future judg-' ment of the court. * * * ” (citing authorities)
The trial courts generally have control of their orders, decrees and judgments and can vacate or amend them at any time during the term of court in which they are made. Hendry v. Lewis, Fla.1952, 59 So. 2d 854; Revell v. Dishong, 1937, 129 Fla. 9-, 175 So. 905, 908. See also Bergovoy v. Atlantic Electric, Inc., Fla.App.1962, 140 So.2d 885, wherein it was observed that the adoption of Florida Rules of Civil Procedure did not impair the discretionary power of the chancellor, zvhile retaining jurisdiction of a cause, to review a previous order therein entered. In this connection it is not amiss to observe, by way of analogy, that in actions at law, where the court determines the issue of liability by summary judgment and orders a trial on the issue of damages, the judgment is not final and appealable. Brannon v. Johnston, Fla.1955, 83 So.2d 779.
Thus the decree of January 30, 1961 was the final judicial pronouncement in the present case and should be accepted as the appealable order. According to the previous order of November 15, 1960 the chancellor must have felt that the plaintiff, although not strictly a lessee, had breached an obligation to lease, and so should be required to respond in damages; for the suit was kept open to determine damages resulting to the defendant from the plaintiff’s failure to make good her commitment. Until the extent of such damage was determined there was no basis upon which the defendant could ascertain whether he was aggrieved at all — or aggrieved sufficiently to warrant an appeal. The judicial labor was not complete.
The recited facts and circumstances convince me that the plaintiff entered into a valid agreement to lease the Pink Flamingo Motel in Pompano Beach, Florida. The formal lease contract would confirm the understanding of the parties, but such formalization was not an express or implied condition precedent to obligation. This view was, as stated, practically implicit in the chancellor’s order of November 15, 1960 holding over the determination of damages.
Words and acts with reference to a particular matter, even though informally expressed, may suffice to create mutual obligation between the communicating parties. Negotiations in themselves have no binding force; but where there is substantial accord on the essentials of a lease transaction and unconditional part payment of rent and additional ¿rent security, as in this case, obligation ordinarily results. 51 C.J.S. Landlord and Tenant §§ 188, 190 and 209.
These parties were beyond the stage of mere negotiation. The defendant advertised the motel for rent. The plaintiff answered the advertisement. She drew her check in the sum of $4200.00, which the defendant acknowledged as covering the first month’s rent on the basis of $600.00’ per month and rent security for an additional six months. The plaintiff’s check was not qualified in any way. The defendant thereafter did not attempt to vary the terms or contradict the intentions of the parties reflected in the check and the memorandum receipt. Although the receipt contained no descriptive reference to the subject property, the plaintiff’s check was endorsed “John Widmeyer, Pink Flamingo Motel, John Widmeyer” and the plaintiff's, letter of May 5th, 1960, supra, contained an acknowledgment of the identity of the property as “The Pink Flamingo Motel.” These factors together constitute the neces *829 sary components of an agreement to lease, —offer, acceptance, the property involved, terms of rent, duration of tenancy and an Unqualified passing of consideration amounting to more than half the rental for the agreed term.
In the somewhat analogous case of Johnson v. Williams, 1934, 178 La. 891, 152 So. 556, 559, the Louisiana court discussed its previous decision in Knights of Pythias v. Fishel, 1929, 168 La. 1095, 123 So. 724, and said:
“While this [is] a suit to enforce an [oral] agreement to lease and not one on a lease contract, the opinion clearly enunciates the rule that where parties enter into an agreement to lease, and act upon the agreement, neither party is at liberty to withdraw on the pretext that a contract of lease was never reduced to writing, although such was contemplated.”
Assuming a valid agreement to lease, the next question would he the measure of damages for breach thereof — the breach of failing or refusing to enter into possession and to carry out the agreed terms of the proposed tenancy. In this connection the lack of Florida case law precisely in point probably indicates the infrequency of litigation involving this phase of the law of damages; but it is the generally accepted rule that the measure of damages for breach of a proposed lessee’s agreement to enter into possession is the difference between the rent the proposed lessee agreed to pay and the actual rental value of the premises. If a security deposit has been made, the proposed lessor is not necessarily entitled to retain the entire deposit as liquidated damages, nor can he recover the agreed rent, as such, since an “agreement for lease” vests no estate in the proposed lessee. See 54 A.L.R., Annotation 1355, and cases cited. In 32 Am.Jur., Landlord and Tenant, § 33, the text reads:
“Where the proposed lessee refuses to take a lease in pursuance, of his agreement to do so, an action will not lie against him to recover the rent which he was to pay. His [lessee’s] liability is for damages for breach of his agreement. The reasons given for this rule are that an agreement for a lease does not create the relation of landlord and tenant and vests no estate in the proposed lessee, and that consequently, the stipulated return can not be recovered as rent. (Emphasis added)
“The measure of damages recoverable for the breach by a lessee of his agreement to lease property is governed by the same general rules of damages as are applicable where the breach is by the owner of the property. The general rule as to the measure of damages recoverable for the lessee’s breach of his agreement is the excess, if any, of the agreed rent over the actual .rental value of the premises, together with such special damages as the plaintiff may plead and prove to have resulted from the breach.
“Where a deposit is made by a proposed lessee as security for his agreement to take a lease, the proposed lessor is not necessarily entitled to retain the entire deposit as liquidated damages for breach of the agreement to take the lease.”
In Lanzalotti v. Cohen, Fla.App.1959, 113 So.2d 727, the court observed that the measure of damages recoverable against a lessor for breach of contract to make a lease is the difference between the rental value of the property for the term and the agreed rent. In Moses v. Autuono, 1908, 56 Fla. 499, 47 So. 925, at 926, 20 L.R.A.,N.S., 350, the opinion states:
“For a breach of contract to lease lands and tenements, the law contemplates compensation for losses that are the natural and proximate result of the breach. A party is in law held to have contemplated the natural and proximate *830 results of his acts. In general, the measure of damages is the difference between the stipulated rent and the value of the use of the premises. * * ”
See also Kanter v. Safran, Fla.1953, 68 So.2d 553, 558.
For the reasons stated I would have reversed the decree and remanded the cause for appropriate proceedings.