WILLIAMS, Judge.
Plaintiff, George H. Mercer, is the owner of a tract of land located at the southwest corner of 70th Street and the Mansfield Road in the city of Shreveport. Defendant Theodore G. Solomon was engaged in a joint venture comprised of Harrison-McElroy Theaters and Northwest Theaters doing business as Shreveport Drive-In Theaters which operated the Sunset Drive-In Theater located on the tract. Defendant Solomon had caused to be recorded two documents purportedly affecting this property. One document consists of a lease agreement by Solomon with Walgreen Louisiana Company, Inc., also made a defendant in this suit. The second document consists of a letter addressed to plaintiff Mercer, the terms of which appear below. Plaintiff Mercer instituted this action for a declaratory judgment seeking to have the documents cancelled from the public records of Caddo Parish and a declaration that the documents do not affect the property and are not binding on the parties. Defendant Solomon answered and filed a reconventional demand that the agreement dated July 31, 1961 be recognized as a valid lease for a term of 20 years beginning April 19, 1966. Walgreen also answered and assuming the position of third-party plaintiff, asked that if judgment be rendered on the main demand in favor of Mercer cancelling any prior agreement between Solomon and Mercer or holding that Solomon has no right to acquire any lease from Mercer, that judgment be rendered in its favor relieving it from any liability to Solomon. Judgment was rendered in favor of Mercer and against Solomon and Walgreen on the main demand, rejecting the reconventional demand. Judgment was further rendered in Walgreen’s favor terminating and cancelling the recorded agreement between it and Solomon. From this judgment Solomon appealed.
Mercer, as owner of the Sunset Drive-In Theater, had entered into a written lease with Manley, Inc., a Missouri corporation, for the operation of the premises as a motion picture theater for a ten (10) year period beginning April 19, 1956 and terminating April 18, 1966. This lease was a detailed document, with the terms and consideration clearly set forth.
On July 31, 1961 Mercer was presented a letter by a representative of Theodore G. Solomon. Mercer signed the letter and it was returned to Solomon. At a later date Solomon also signed the letter. Solo *757 mon did not advise Mercer that he signed the letter nor did he furnish a copy to Mercer. The contents of this document reads as follows:
“Mr. G. H. Mercer,
Shreveport, Louisiana
Dear Mr. Mercer:
With your signing this letter, it will serve as an agreement between you and T. G. Solomon, Agent, or any of his assignees, that when the lease on the property and improvements owned by G. H. Mercer, on which the Sunset Drive In Theatre is located expires with Manley, Incorporated, that a lease will be signed as soon as attorneys can draw it up. The lease will be drawn for a period of twenty years, with the rental and provisions the same as the Manley lease to be included.
“This lease will be from April 19, 1966 for twenty years.
Very truly yours,
(Signed) T. G. Solomon
T. G. Solomon, Agent
(Signed) G. H. Mercer
G. H. Mercer”
Prior to the termination of the Manley lease Solomon and others, including Manley, operated the Sunset Drive-In Theater as a joint venture. After April 18, 1966 Solomon continued with his associates, excluding Manley, to operate this theater under the same terms as the Manley lease. Mercer was employed as the manager of the theater by the Solomon group and the rent specified in the Manley lease was paid monthly.
No request was made by Mercer or Solomon that a written lease, referred to in the above letter, be drawn up. On or about April 18, 1966 Solomon with Mercer’s knowledge and consent, began to explore the possibility of turning the theater property into a commercial project or shopping center.
Solomon’s progress was slow and it was not until early in 1968 that he presented to Mercer a firm agreement that he had negotiated with Walgreen Louisiana Company, Inc. The terms and conditions of this proposed lease were not acceptable to Mercer. Solomon in the meantime executed the Walgreen lease. One of the provisions of the lease was that if Solomon could not obtain Mercer’s approval of the lease and a leasehold title by January 1, 1970 Solomon would be released from any personal responsibility. In June 1968 Solomon decided that he and Mercer could not reach an agreement on the commercial use of the property. Solomon then recorded the letter of July 31, 1961 and the lease he had executed to Walgreen. At the same time Solomon requested Mercer sign a lease in his favor substantially the same as the “Manley lease.” Mercer refused and this suit followed.
It is Solomon’s position that the letter or document signed by Mercer and Solomon dated July 31, 1961 has the legal effect of a twenty year written lease, and that under its terms he is a tenant of Mercer and Solomon’s lease will not terminate until April 19, 1986. In support of this position Solomon cites the case of Johnson v. Williams, 178 La. 891, 152 So. 556 (1934). The court’s attention is called to expressions of the Louisiana Supreme Court in the Johnson case which are as follows:
“The general rule, settled by authority, is that where parties contemplate that *758 their final agreements are to be reduced to writing and that the existence of the contract between them shall depend upon its final reduction to writing, the reduction of them to writing is necessary to the perfection of the contract. This is upon the theory that in such cases the final agreements are held in suspense until the written instrument is signed.
“But that rule finds no application in a case like the one here presented. The rule which controls this case is that an agreement to lease designated property for a specified term and a stipulated monthly rental, all understood and agreed to by the parties, creates the relation of landlord and tenant between the parties when followed by use and occupation of the premises as contemplated.”
[152 So. 556, 558]
Careful study of the opinion and basis thereof brings into focus how clearly the conclusions reached therein are inapposite to the instant case. In the Johnson case the Court stated:
“Johnson and Williams reached a complete agreement concerning a lease on certain property for a specified term at an agreed rental. This agreement was reduced to writing and signed by the parties. * * * All the details were agreed upon and set out in that written instrument. That instrument was assigned by Williams to the corporation organized by him and of which he became president. The corporation had a right to demand that the lease contract be reduced to writing, but made no such demand. On the contrary, it accepted the contract with full knowledge of all its provisions. It took possession of the property and held it for more than five years as tenant, paying the rent all the while — all in exact accord with the written agreement.
“Under such circumstances neither Williams nor the corporation can be heard to say now that there is no binding contract of lease merely because the lease contract was never reduced to writing. By taking possession of and using the property as they did, defendants waived their right to have the lease contract reduced to writing. If it be conceded that the original agreement was inchoate and that it was contemplated that either party might withdraw, the right to withdraw ceased when the proposal was accepted and executed. The agreement which the parties entered into ripened into a perfect and, binding contract of lease when carried out by them in every detail. Their conduct shows unmistakably that they did not intend that the reduction of the contract to writing should be necessary for its completion, and if they did, that formality was waived. * * * ”
[152 So. 556, 558]
The letter dated July 31, 1961 which was signed by Mercer is not a complete agreement between Mercer and Solomon. It contemplates action to be taken at a time some five years distant. There remains the question of when was the letter signed by Solomon and why such evidence of signing was not made known to Mercer. On trial Mercer testified he was not aware that Solomon signed the document nor was he furnished with a copy. Solomon’s testimony is silent on this point. It is readily apparent from the testimony of Solomon and Mercer that the continued use and occupation of the Sunset Drive-In Theatre by the joint venture was not the use and occupation as contemplated by the letter or document filed by Solomon in the records of Caddo Parish.
Solomon stated that when he was absolutely sure that they would commercialize the property that they terminated the Manley phase. In his negotiations with the Walgreen representatives he states it was recognized that Solomon was friendly *759 with Mercer and that a ground lease of the premises would be worked up. Solomon testified that the reason he did not have attorneys draw up a lease on April 19, 1966 was: “Primarily, I felt sure we were going to a commercial lease and that this lease would be naturally cancelled out. And we did draw the commercial lease, but we never did get together on it * * * ”
It is at this point that Solomon looks toward the document in question for comfort. His position was at this date that the letter was a completed agreement of lease coupled with the use and occupation of the premises. Such conclusions are not supported by Solomon’s request to Mercer that “ * * * there would seem to be no purpose in holding in abeyance any longer the execution of the lease agreement to which Mr. Solomon and Mr. Mercer agreed by a letter dated July 31, 1961.”[1]
For the reasons above stated the facts in Johnson v. Williams, supra, are easily distinguishable from the instant case, and the holding therein inapposite.
The district court in a written opinion expressed in a concise form that “ * * * both parties realized just from their testimony that this property had better uses than a drive-in theater, and commenced to negotiate for the lease of the property for other purposes. We think that that’s the reason that no formal lease was ever drawn up. And they both realized ithat it was not going to be used for 20 years as a drive-in theater. Therefore, we think that there was an implicit recognition or agreement — I think recognition is a better word —between the parties that this was going to be on a month-to-month basis until they could get the property put to some other purpose.”
For the reasons assigned the judgment under review is affirmed at appellants’ cost.

. (See Defendants’ Exhibit “A” — Letter of Counsel of Solomon to counsel for Mercer, dated June 7, 1968).