The plaintiffs, Dr. John T. Capo, and his wife, Mrs. Elsa Waldhauser, in summary proceedings seek to evict their tenant, Adams Hats, Inc., from certain commercial property located at 132 St. Charles St. in the City of New Orleans.
The plaintiffs allege that the defendant is in possession of the premises under a verbal month to month lease for a rental of $350; that plaintiffs desiring to obtain possession in order to deliver the premises to another tenant had given the defendant written notice to vacate the property more than ten days before the expiration of the month ending July 31, 1944; that the defendant had failed to comply with the notice to vacate; and that plaintiffs are entitled to summary process to dispossess the defendant.
Dons, Inc., who had entered into a lease with the plaintiffs for these premises, intervened, setting forth that it would be seriously damaged if the suit were not maintained.
The defendant, in its answer, denied that it had leased the premises on a month to month basis and averred that it was in possession of the premises under a written contract of lease for a period of two years and four months, commencing on June 1, 1944, and ending on September 30, 1946.
Upon trial, the lower court gave judgment in favor of the plaintiffs, ordering the defendant to deliver possession of the *Page 59 
premises to the plaintiffs and decreeing that upon defendant's failure to comply with the judgment in twenty-four hours after its rendition, a writ of possession issue directing the civil sheriff to eject the defendant and place the plaintiffs in full possession of the premises. The defendant has appealed.
The plaintiffs acquired the property involved in this suit on March 24, 1944, at which time the defendant was occupying the premises under a month to month verbal lease from the previous owners. At the date of the plaintiffs' acquisition of the property, the defendant was paying a monthly rental of $275 per month, which amount it continued to pay the plaintiffs until the end of May, 1944.
Shortly after the plaintiffs acquired the property and prior to May, 1944, the plaintiffs insisted on the confection of a written lease for a period of two years or more at a rental of $350 per month. The defendant did not at that time want to pay any increased rental and did not want to sign a lease for a long period of time. It desired to continue in possession of the premises under a month to month arrangement. However, after continued negotiations, the defendant agreed to pay $350 per month commencing June 1, 1944. Subsequent to this agreement, the defendant consented to enter into a written lease for a period of two years and four months at a monthly rental of $350.
There is a dispute in the evidence as to when the written lease was presented to the defendant to sign. From the testimony *Page 60 
offered on behalf of the plaintiffs, the written lease was presented to Mr. Morris Barton, president of Adams Hats, Inc., on May 28, 1944. Mr. Barton's testimony is to the effect that the lease was presented on June 5, 1944. Mr. Barton testified that the check incorporated in the record, calling for $350, dated June 5, 1944, was given to Dr. Capo at the time the lease was presented to him. Dr. Capo's testimony is to the effect that the check was given pursuant to the previous agreement whereby Adams Hats, Inc., through its president, Mr. Barton, agreed to pay $350 for the premises before Mr. Barton had agreed to sign a written lease.
Incorporated in the record is the written lease upon which the defendant relies. It is signed only by Adams Hats, Inc., by Mr. Morris Barton, president-manager.
It appears that Dr. Capo prepared the instrument and called Mr. Barton in with the view of confecting the agreement. Mr. Barton raised some objection to a provision in the lease, which the plaintiff changed at that time to comply with Mr. Barton's request. After this change had been made, Mr. Barton complained of another provision in the lease which pertained to the roof of the building. He was not satisfied that sufficient protection was given because of former trouble he had had with the skylight of the building.
Dr. Capo testified that Barton requested permission to take the lease home to look it over with the understanding that he would return it and sign it the following morning. Mr. Barton's testimony is similar *Page 61 
except that he testified that there was no time limit as to when he should return the written instrument.
On June 16, 1944, the plaintiffs entered into a written agreement, leasing the premises to Dons, Inc., for a period of twenty-five months, commencing September 21, 1944, and ending September 30, 1946, for a monthly rental of $350 payable in advance.
Mr. Barton signed the lease and returned it through his daughter to Dr. Capo on June 21 or 23, 1944, by delivering it to his secretary. Dr. Capo and his secretary testified that immediately after the lease was delivered to Dr. Capo's secretary they contacted Mr. Barton and notified him that Dr. Capo had leased the property to another tenant. Mr. Barton testified that he was not notified of this fact until the 28th day of June.
Dr. Capo's version of what occurred is to the effect that he had considerable difficulty in persuading Barton to agree to pay an increased rental and finally consenting to enter into a written contract of lease covering a period of two years and four months. Dr. Capo and his secretary testified that when Barton failed to return the next morning with the lease, after he had taken it home to examine, they made repeated efforts to ascertain whether or not Barton would sign the lease. Their testimony is to the effect that they phoned employees of Barton and Barton's brother. Dr. Capo testified that another concern was desirous of leasing the property, and when Barton failed to sign the lease between the date he took it home on May 28 *Page 62 
and June 16, 1944, he arrived at the conclusion that Barton did not intend to sign it. He thereupon signed a lease with Dons, Inc.
Barton's version is to the effect that no time limit was set for his signing the lease when he requested permission to take it home and look it over. He testified that he took the lease home on June 5, 1944, and not on May 28, 1944. He further testified that Dr. Capo did not notify him that he intended to recede from the lease and gave no notice of his having leased the property to Dons, Inc., until June 28, 1944.
The trial court did not hand down any written reasons for judgment. However, it must have accepted Dr. Capo's version of the transaction. Under the circumstances we are not prepared to say that its findings of fact were manifestly erroneous.
The defendants contend that the check for $350, dated June 5, 1944, was paid to Dr. Capo under provisions of the lease, and that all of the terms of the lease were understood and agreed to by the parties. The argument is advanced that this created the relation of landlord and tenant between the parties when the check was received under the terms of the lease.
Defendant concedes that under the general rule where parties contemplate their final agreements are to be reduced to writing, and the existence of the contract between them shall depend on its final reduction to writing, the reduction to writing is necessary to the perfection of the contract upon the theory that in such cases the final agreements are held in suspense until the written contract is signed. *Page 63 
However, the defendant contends the rule is not applicable to the present case, and the rule which controls this case is that an agreement to all the provisions of the lease, understood and agreed to by the parties, creates the relation of landlord and tenant when followed by a payment of rent under the terms of the lease.
In support of the contention the following cases are cited: Montague v. Weil Bro., 30 La.Ann. 50; Coffee v. Smith,109 La. 440, 33 So. 554; Knights of Pythias v. Fishel, 168 La. 1095,123 So. 724; and Johnson v. Williams, 178 La. 891, 152 So. 556.
We are not prepared to say that the payment of $350 was made under provisions of the lease. It could well have been paid under the prior agreement. The lower court must have been of the opinion that it was paid under the prior agreement. If that be the case, such payment could not be regarded as evidencing that the parties regarded the contract complete. Such an act could not be taken as an inducement to lead the defendant to believe that the plaintiff regarded the lease as binding and complete.
If the defendant's version of what occurred is correct, Mr. Barton was not satisfied with the terms of the lease insofar as it pertained to the skylight of the building at the time he gave the check. He, at that time, requested permission to take the lease home and look it over. We have examined the cases cited and find they are not in point. We are not presented with a case herein where all the details of the lease have been agreed upon, and one of *Page 64 
the parties has acted in such a manner as to lead the other to believe that the lease is binding and complete.
Undoubtedly, the plaintiffs had some difficulty in persuading the defendant to agree to lease the premises for a long period of time. Mr. Barton admits, in his testimony, that he preferred at all times to lease on a monthly arrangement and only agreed to enter into a lease for a long period of time at the insistence of Dr. Capo.
When Mr. Barton took the lease home and did not return it for some time, Dr. Capo had reasonable grounds to believe that he was not going to sign it in view of the fact that Mr. Barton had only agreed to enter into such a lease at his repeated insistence. Dr. Capo was under no obligation to wait a longer period of time. In fact, either of the parties had a right to recede from the lease, under the circumstances in this case, before they signed the contract.
In the case of Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89, 90, 78 Am.St.Rep. 350, this Court stated:
"A verbal contract of lease, complete in itself, independent of any writing, and unaccompanied by an intention to have the same reduced to writing, as perfecting it, is an enforceable contract. And if such a verbal contract be made, and subsequently the parties agree that the same shall be reduced to writing and be signed, and afterwards there is a failure to so reduce it to writing and to signature, — one of the parties refusing, — it is still enforceable as a binding contract. Carlin v. Harding, 10 *Page 65 
La. [223], 225; Avendano v. Arthur, 30 La.Ann. [316], 321. But if, when a verbal contract of lease is agreed on, it is understood, contemplated, and intended that it should be reduced to writing, that there should be a written lease, and that the written lease should take the place of, and stand for, what has been agreed on verbally in respect to the leasing of the property, then until the writing is drawn up and signed the contract is inchoate, incomplete, and either party, before signing, may recant, retract, recede, withdraw, decline to go further, refuse to consummate. Fredericks v. Fasnacht, 30 La.Ann. 117; Villere v. Borgnier, 3 Mart. [O.S., 326] 349; [Id., 3 Mart., O.S., 507], 527; Bloeker v. Tillman, 4 La. [77] 80; Wolf v. Mitchell, 24 La.Ann. [433], 434; Fernandez v. Soulie, 28 La.Ann. 31; Des Boulets v. Gravier, 1 Mart.,N.S., [420], 421, 422; Meyer v. Labau, 51 La.Ann. [1726] 1729, 26 So. 463." Also see: Rosenfield v. United States Trust Co., 290 Mass. 210,195 N.E. 323, 122 A.L.R. 1217; Bates v. Southgate, 308 Mass. 170,31 N.E.2d 551, 133 A.L.R. 1349.
The defendant contends in the alternative that Barton's action in signing the lease and returning it to Dr. Capo had the effect of constituting the written lease an executed contract and binding on the plaintiffs as though they had actually signed the instrument in view of the fact that Dr. Capo had prepared the lease, handed it to Barton, granted the defendant occupancy of the premises and accepted the rental called for under the written lease. In support *Page 66 
of this contention the defendant cites the case of Auto-Lec Stores, Inc., v. Ouachita Valley Camp No. 10, W. O. W.,185 La. 876, 171 So. 62.
Prior to and at the time the negotiations were taking place, the defendant, Adams Hats, Inc., was in possession of the premises. The check for $350 could have been given under the oral agreement or in pursuance to the written contract. The lower court evidently believed that it was given under the oral agreement.
We have examined the case cited and do not think that it is in point for the reason that the tenant in that case who had not occupied the premises was placed in possession, executed the rent notes under the terms of the unsigned lease and paid the rent to the defendant on the first of each month as stipulated in the unsigned contract. We held that the agreement was complete; was carried out and acted upon to the letter; and thereby became an executed contract.
In the present case, the parties did nothing to indicate that they intended for the lease to be complete. In fact, Dr. Capo was insisting on the execution of a written lease. The possession of the defendant continuing from prior possession was more in the nature of sufferance awaiting the execution of the contract. Dr. Capo did no act which would have led the defendant to believe that he considered the contract executed.
For the reasons assigned, the judgment is affirmed at defendant appellant's cost. *Page 67