YARRUT, Judge.
The District Court rendered judgment in favor of Defendants, dismissing Plaintiff’s •suit, at Plaintiff’s cost, from which Plaintiff has taken this appeal.
Plaintiff is engaged in the business of selling, leasing and servicing ice-making machines, the rent, repair and value of which are involved here. Defendants are a ■commercial co-partnership and its individual partners, operating a restaurant and bar, known as “Court of Two Sisters,” in the Vieux Carre in New Orleans.
Reference to “Defendant” will be to-the partnership, unless the individual partners are named.
Plaintiff’s suit is for $6040.31, representing (1) rent for three pieces of ice-making equipment at the rate of $167.00 a month for 22 months, (2) $231.31 for repairs to the equipment during the lease to Defendant, and (3) $2135.00 value of the equipment rendered worthless by the conduct of Defendant.
The original establishment known as “Court of Two Sisters” was operated by one James Cooper for some years prior to his death. Upon his death the Administra-trix of his estate continued to operate the business under court authority with Defendant-Karno as manager. In 1952 Plaintiff executed a lease of the equipment with Cooper for 60 months, ending February 13, 1957, at a monthly rental of $132.00, plus liability for necessary repairs.
Defendant purchased the business from the Cooper estate, and was operating it when the original Cooper lease with Plaintiff expired on February 13, 1957. Thereafter, Plaintiff testified that, on many occasions, he discussed with Defendant-Karno the renewal of the lease by Defendant, and Karno agreed to lease on a month-to-month basis, at $167.00 a month, cancellable upon 15 days prior notice by either party.
A written lease, embodying the agreement with Karno, and prepared by attorney for Plaintiff, was signed by Plaintiff and Miss Margaret Tannenbaum, as a witness, the latter being the general manager and major-domo of the restaurant for Defendant. Miss Tannenbaum was to obtain Karno’s signature. Defendant continued with the use of the equipment and Miss Tannenbaum paid the first six months’ rent of $167.00 in the absence of Defendant-Karno in Mexico. Upon Karno’s return, he was informed about the lease and that Miss Tannenbaum had paid the rent. He then forbade her to pay any more rent, claiming he had made no such lease with Plaintiff.
Month after month, for 22 months, Plaintiff continued to invoice Defendant for the monthly rent, none of which was paid. Plaintiff visited the premises two or three times a week to check the equipment, made whatever adjustments were necessary and, during the period it was not producing ice, himself furnished ice without cost to Defendant. Finally, despairing of collecting the rent, Plaintiff attempted to remove his equipment, but was refused the right to *918 enter the restaurant by Defendant-Caracci, who told him not to return any more, as he must be crazy to want to remove the equipment. Plaintiff then consulted his attorney, who obtained a judicial sequestration.
The primary question is whether or not there was a lease between Plaintiff and Defendant; Defendant’ vigorously contends there was no lease, and hence has no liability for rent, repairs, or the value of the damaged equipment.
The District Judge from the bench rendered judgment, and dictated his reasons, inter alia, as follows:
“The gravamen of this suit on the merits is that the plaintiff did make an oral agreement with Nick Karno, the defendant, and through his partnership, to rent certain machinery for $165.00 a month. He says he has a month-to-month lease. He has not substantiated the oral agreement with any testimony before this Court other than that of his own, and a document which he apparently left with the lady manager of Karno in which he attempted to get a written lease upon this equipment, which lease was never perfected, and apparently no effort was made to perfect it after it was delivered to the lady, never perfected with Karno, his partner Caracci, or anyone else. She testifies that Karno was out of the city at the time, and she was operating the place, and on the statement of the plaintiff that Karno had agreed to lease such as that, she issued the checks in question on March, April, May, June, July and August for a stated rental which happened to be the same amount that was in the lease. When Karno returned to the city he told her he had no such agreement, and that therefore he refused to pay any further.
“The testimony in this case is replete with the fact that the plaintiff has been asked to remove his machinery and he did not, because it did not work. It is also replete with the fact he was asked to repair his machinery, and it was never put in workable condition. One of his competitors, who finally sold some machinery to the same partnership, stated that at the date he saw it it was not in workable condition and could not be put in workable condition.
“The Court feels the plaintiff has not succeeded in proving his case by a preponderance of evidence and will dismiss the suit at plaintiff’s cost.”
Plaintiff definitely states what the arrangements were, as incorporated in the-signed document given to Miss Tannen-baum. Defendant-Karno was indefinite,, uncertain and shifted his position fromi time to time. He did admit Miss Tannen-baum was general manager of the business,, and that he was usually absent from the-city four or five months a year, during' which she was in full charge.
When Miss Tannenbaum was asked' whether there was any lease, she said, “No.”' She explained that she paid the first six months’ rent in error, and ignored future-rent invoices because the machinery was-owned by the Cooper estate. When shown-the lease with her signature as a witness, she acknowledged it, and explained she-just had forgotten it. When asked how she knew the rent was $167.00 a month, she-replied she had glanced through the lease..
When asked if she received the monthly-bills from Plaintiff for the $167.00 a month’ rent for all the months claimed by Plaintiff,. Miss Tannenbaum testified:
“Q. What action did you take with respect to these invoices when they were received?
“A. I would ignore them, because I had told Mr. Shear we didn’t have to rent these machines, they were furnished to us by the estate just as the stoves.”
If Miss Tannenbaum had any doubt about' the lease she should have contacted Karno' before paying six months’ rent. It is- *919 strange that, though Defendant claims the six months’ rent was paid in error, it made no claim for refund in this suit.
At first blush, it does seem strange that Plaintiff permitted 22 months to pass without collecting the rent or terminating the lease. Defendant did not terminate the lease, but did attempt to prove the equipment was not operating properly, and that Karno insisted Plaintiff repair or remove the same. When Plaintiff did attempt to remove his equipment, he was prevented by Defendant-Caracci, who refused even to let Plaintiff enter the premises. Had Plaintiff been able to obtain the equipment simply by calling at the restaurant, it seems strange he would have resorted to the expense of judicial proceedings.
The Sheriff’s deputy, who made the seizure, testified that one piece of equipment was in the premises and operating at the time. He sought information about. the location of the other two pieces, but was refused any information by Defendant’s employees. Plaintiff, with him at the time to identify the equipment, learned the other two pieces were located in a lot owned by Karno,' two squares away, where it was found by the deputy completely dismantled, exposed to the elements, and characterized as “a pile of junk.”
Defendant-Karno, 'when questioned by the Court, testified:
“BY THE COURT:
On what basis were you using his machinery after the estate of Cooper passed out of the picture ?
“A. The only use of them, that they were trying to get them fixed, they were, and all I wanted was that the day the equipment would be in first class condition — not in first class, in their usage, that they could produce the ice—
“BY THE COURT:
When the machinery became usable, according to your story, what were you to do?-
“A. But they never did become usable. They would work only from one hour to a day, and there was three machines.
“BY THE COURT:
Then, your .testimony was you never had any agreement with Shear at all about his machinery, to rent it?
“A. It would be the day that he got them repaired.
“BY THE COURT:
But you never made that agreement, you’re telling me, is that what you’re telling me?
“A. I made agreement that the day they would be operating, to produce the ice, then we’d go into an agreement.
“BY THE COURT: '
But you never had a fixed agreement as to how much you were to pay for it?
“A. No.
“BY THE COURT:
In other words, you had an agreement, so you say, to make an agreement; that’s what you’re telling-me; and when Shear got his machinery satisfactorily fixed so you could use it, then you were going to make an agreement, otherwise you had no agreement with him whatsoever?
“A. That’s it.”
When questioned by the Court whether she had given notice to Plaintiff to .remove • the equipment, Miss Tannenbaum testified as follows:
“BY THE COURT:
Miss, Tannenbaum, between September of 1957, the -last payment seems to have been on August of *920 1957, and the time that you made the last payment to the plaintiff in this case for so-called rental under the misapprehension that you had, until you bought new machinery in November of ’58, did you use the ice machinery that was on the premises when it was working?
“A. If it was working, which was infrequently.
“BY THE COURT:
Did you ever demand that this man get his machinery out of the place after September, ’57?
“A. Yes sir; that is to say, we didn’t, demand it, we asked that he either repair it or remove it.
“BY THE COURT:
When did this- take place, in September of ’57 or when?
“A. I wouldn’t be able to name.it as long ago as that, the exact month, but I’d say on several occasions we called him and asked him, ‘Please, for heaven’s sake, either fix it or get it off the premises.’
“BY THE COURT:
There seems to be a period of fifteen months between the payment and the time you purchased new machinery. During those fifteen months, did you tell him to get the machinery off the premises?
“A. Yes, a number of times.
“BY THE COURT:
And what did he say?
“A. He would come and try to repair it, but later on he just didn’t even bother. His attitude seemed to be-that, ‘well, give me some money and I’ll try to do something about it.’ However, we had put out so much money on it without any return that it just seemed like-throwing good money after bad.”’
These events and contentions show that Defendant shifted its position from that of not having any lease, and the machinery was. inadequate, to the position, given by Miss-Tannenbaum and certainly known to Kar-no, that the monthly accruing rent was not paid bec'ause the machinery was furnished! by the Codper estate, not by Plaintiff.
. On' the question of the value of the two-pieces of equipment found abandoned by Plaintiff, he testified that, when he first leased it to Cooper in 1952 it was new and worth $4300.00, and had a value of" $2135.00 at the end of the lease. Mr. Richardson, who sold the substituted and second-hand equipment to Defendant to replace-' Plaintiff’s, when asked what he considered was the valué of Plaintiff’s machinery, on what he would sell it for, said: “Well, I don’t think that’s quite a fair question, because I' couldn’t offer it for sale. I couldn’t-sell it, I wouldn’t offer it for sale.” Hence,, the 'only evidence of value at the termination of the lease was that given by Plaintiff. The item of $231.31 for repairs is. not 'disputed.
There is no doubt of the existence-of the lease on a month-to-month basis at-$167.00 per month, subject to cancellation! by either party upon 15 days prior notice,, in view of the draft signed by Plaintiff, witnessed by and delivered to Defendant’s, general manager; the payment of rent for six months; the apprisal of the situation! by Karno upon his return from Mexico;- and the continued use of the equipment by Defendant for 22 months after Karno’s. return and, until Plaintiff’s judicial sequestration, at which time one piece of equipment was still in use in Defendant’s restaurant.
Defendant’s attempt to explain that the-removal of two pieces of equipment and the-retention of the one piece, was due to the-lack of space for the two removed and' adequate space for the one retained, is very-weak to say the least.
*921 -Plaintiff did attempt to terminate the lease when ■ he called to remove the equipment, only to be refused by Defend•ant-Caracci, hence the obligation to pay rent ■continued until Plaintiff instituted the sequestration suit. Since, Defendant claims to have terminated the lease by repeated requests of Plaintiff to “repair or remove,” 'the burden of proof of such termination -and the date thereof, rested upon Defend•ant, which Defendant failed to sustain.
The only proof of definite termination is the judicial sequestration which Plaintiff was compelled to institute to repos■sess his equipment after 28 months in possession and use by Defendant.
A lease is similar to a sale, with three essentials common .to both: The "thing, the price, and the consent. LSA-C.C. art. 2670; Chaney v. Whitney, La. App., 107 So.2d 471; and may be either -written or verbal. LSA-C.C. art. 2683.
The relationship of landlord and tenant may be implied from the payment -of rent. Brandagee v. Fernandez, 1 Rob. 260.
Parties entering into agreement to lease, and acting upon such agreement, cannot withdraw on pretext that lease was never .reduced to writing, although such -was contemplated. Montague v. Weil & Bro., 30 La.Ann. 50; Johnson v. Williams, 178 La. 891, 152 So. 556.
Relationship of landlord and tenant -is created by contract, either express or implied. Waldhauser v. Adams Hats, 207 La. 56, 20 So.2d 423.
A party need not accept a contract ■expressly or by his signature. He does so ‘by availing himself of its stipulations. Woodworth v. Wilson, 11 La.Ann. 402; Amory v. Black, 13 La. 264; Bodenheimer v. Mary Planting & Manufacturing Co., 1 Orl.App. 13; Frazier v. Dick, 5 Rob. 249; Johnson v. Capital City Ford Company, La. App., 85 So.2d 75.
For the above and foregoing .reasons, the judgment of the District Court is reversed, and there is now judgment rendered in favor of Plaintiff, Ben J. Shear, doing business as Ajax of Louisiana, and against Defendant-partnership known as Court of Two Sisters, and the individual members thereof, Nick Karno and Frank Caracci, jointly and in solido, in the full sum of $6040.31, with legal interest from judicial demand until paid, and all costs in both Courts.
Judgment reversed and rendered.