618 So.2d 1123 (1993)
Alfred MYERS and His Wife, Lori Myers, Individually and on Behalf of Their Minor Children, Roderick Myers, Tabetha Myers and Steven Lee Myers
v.
BURGER KING CORPORATION and Muhleisen Properties.
Nos. 92-CA-0400, 92-CA-1890.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1993.
Rehearing Denied June 23, 1993.
*1124 Stephen N. Elliott, Mickey S. deLaup, Jeffrey K. Warwick, Bernard, Cassisa, Saporito & Elliott, Metairie, for defendants/appellants, Nationwide Indem. Ins. Co., Nationwide Mut. Ins. Co. and Parkway Const. Co.
John C. Combe, Jr., Donna Powe Green, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant/appellant, Burger King Corp.
Before SCHOTT, C.J., and BARRY and WALTZER, JJ.
BARRY, Judge.
Parkway Construction Company (Parkway) and Burger King Corporation (Burger King) entered into a contract to renovate a store. Alfred "Pete" Myers, an employee of Parkway, was working on the renovation when a heavy menu board fell on him and caused extensive injuries. Myers sued Burger King, who third partied Parkway, Nationwide Indemnity Insurance Company (umbrella insurer to Parkway), and Nationwide Mutual Insurance Company (Parkway's general liability carrier).
Burger King's third party claim against Parkway was based on breach of contract. Parkway contractually agreed to insure Burger King against any claim arising from Parkway's operations and to name Burger King as an additional insured on its policy. Parkway admittedly failed to name Burger King as an insured and the trial court granted a partial summary judgment to Burger King. Burger King's request for attorney's fees was denied.
Burger King sued Nationwide Indemnity on the theory that it was an "insured" under an umbrella policy issued to Parkway. In granting Nationwide Indemnity's motion for summary judgment, the trial court held that Burger King was not an "insured" because the insurance required in the renovation contract is not the same type as in Nationwide Indemnity's policy.
Parkway's appeal of the partial summary judgment in favor of Burger King has been consolidated with Burger King's appeal of the summary judgment in favor of Nationwide Indemnity and Nationwide Mutual. Burger King did not file any assignment of error as to Nationwide Mutual and that appeal is considered abandoned.[1]

PARTIAL SUMMARY JUDGMENT IN FAVOR OF BURGER KING
Parkway alleges that partial summary judgment on the breach of contract was erroneous because: (1) there are factual issues regarding the contract; (2) Burger King waived its right to claim a breach of contract; (3) the provision in the contract pertaining to insurance is prohibited by La. C.C. art. 2004; and (4) Myers' injuries did not "arise from" Parkway's operations. Burger King answered the appeal claiming attorney's fees.
The renovation contract between Burger King and Parkway states in pertinent part:
The Contractor shall maintain insurance to protect the Owner and himself from claims which may arise from the Contractor's operations, whether such operations be by himself, any subcontractor, *1125 anyone directly or indirectly employed by any of them, or by whose acts they may be liable. Such claims shall include but not be limited to the following:
1. Claims Under Worker's Compensation, Disability Benefits and Other Similar Employee Acts.
2. Claims For Damages Because of Bodily Injury, Occupational Sickness or Disease or Death of His Employees.
3. Claims for Damages Because of Bodily Injury, Sickness or Disease, or Death of Any Person Other Than His Employees.
4. Claims for Damages Insured by Usual Personal Liability Coverage (i.e., False Arrest, Malicious Prosecution, Libel, Slander, Wrongful Eviction) Which are Sustained (1) By Any Person as a Result of an Offer Directly or Indirectly Related to the Employment of Such Person by the Contractor or (2) By Any Other Person.
5. Claims for Damages Because of Injury to or Destruction of Tangible Property, Including the Loss of Use.
This insurance shall be written for not less than limits of liability required by law, or $1,000,000 aggregate (single limit applicable to bodily injury and property damage combined) whichever is greater. The insurance shall include contractual liability insurance; products liability-completed operations liability insurance; and insurance to cover Contractor's legal liability for acts of Subcontractor's.
Burger King Corporation and its subsidiaries, affiliated companies and parent company shall be named as additional insureds under this policy.
Certification of Insurance required by Paragraph 1 acceptable to the Owner shall be filed with the Owner prior to commencement of work. Failure to do so shall give Owner the option to terminate this Agreement. Under no circumstances shall payments by made by the Owner to the Contractor until such certificates are filed. (Emphasis added).
Parkway admitted that they failed to name Burger King as an insured on their policy. John Elmer, President of Parkway, testified that he did not read the contract before he signed, but he believed that it was the same form as other contracts he had signed with Burger King. A person who signs a written instrument is presumed to know its contents and cannot claim that he did not read or understand the document. Brown v. Simoneaux, 593 So.2d 939 (La.App. 4th Cir.1992).
Our law clearly provides that an owner is entitled to recover from a contractor where the contract between the parties provides that the general contractor will secure liability insurance naming the owner as an additional insured and the contractor fails to do so. Lopez v. Hartford Accident and Indemnity Company, 495 So.2d 375, 378 (La.App. 3rd Cir.), writs denied, 498 So.2d 757, 758 (La.1986); State v. Alexander & Alexander, Inc., 477 So.2d 753, 757 (La.App. 1st Cir.), writ denied, 478 So.2d 909 (La.1985) and Ordonez v. W.T. Grant Company, 297 So.2d 780, 782 (La.App. 4th Cir.1974). Parkway attempts to distinguish those cases by raising issues of material fact.

Factual Issues Regarding the Contract
Parkway claims that certain formalities were not met in the contract.
The contract was drafted by Burger King and forwarded to Parkway. John Elmer, President of Parkway, signed the contract on July 22, 1988. Work on the renovation project began on September 6, 1988. Paul Gershin, Burger King's Vice President of Architecture and Engineering, signed the contract on September 15, 1988one day before the accident.
Parkway asserts that the contract is invalid because a Burger King representative did not sign as a witness, although the contract specified that this was to be done. Manual Verela testified that he initialed the document before Gershin signed and he did not witness Gershin's signature. Parkway relies on La.C.C. art. 1947:
When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do *1126 not intend to be bound until the contract is executed in that form.
The Comment notes that the article does not change the law since its provisions have been consistently followed in our jurisprudence. The Comment cites Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89 (La.1899); Breaux Brothers Construction Company v. Associated Contractors, Inc., 226 La. 720, 77 So.2d 17 (La.1954), and Waldhauser v. Adams Hats, 207 La. 56, 20 So.2d 423 (La.1944). Those cases held that when parties agree that an agreement shall be reduced to writing, the contract is not complete until it is signed and witnessed by all parties. Breaux Brothers Construction Company, 77 So.2d at 20. Thus, cases have interpreted the word "form" in La.C.C. art. 1947 to mean written form. The provision that the contract is to be witnessed does not prescribe a particular "form" for the contract to be executed. The lack of witnesses to a contract does not invalidate the contract where performance has begun. La.C.C. art. 1947 states that it is "presumed" the parties do not intend to be bound until the contract is executed as prescribed. Any such presumption was rebutted when Parkway began work.
Parkway also alleges that the contract was invalid because its offer was irrevocable and not accepted within the prescribed time. On July 22, 1988 Parkway signed the contract which incorporated their price proposals for Burger King's approval. The "offer" states:
The Contractor stipulates that the price quoted in the Proposal shall remain in effect for at least forty-five (45) days from the date Owner receives the Contractor's executed Construction Contract. (Emphasis added).
La.C.C. art. 1928 states:
An offer that specifies a period of time for acceptance is irrevocable during that time period.
When the offeror manifests an intent to give the offeree a delay within which to accept, without specifying a time, the offer is irrevocable for a reasonable time.
La.C.C. art. 1934 states that "an acceptance of an irrevocable offer is effective when received by the offeror."
Parkway claims that because Burger King did not sign the contract until September 15, 1988 (54 days from the date Parkway signed the contract), then there was no valid acceptance under La.C.C. art. 1934.
This argument is without merit. The price quote was in effect for "at least forty-five (45) days." The phrase "at least" indicates that it could possibly be in effect for a longer period of time, thus the contract was irrevocable for a "reasonable time." La.C.C. art. 1928.
Schulingkamp v. Aicklen, 534 So.2d 1327, 1330 (La.App. 4th Cir.1988) states that an offeree may tacitly accept a written offer. Burger King allowed Parkway to begin renovations on September 6, 1988  46 days after Parkway signed the contract. That clearly evidenced Burger King's tacit acceptance of Parkway's "offer" within a "reasonable time." La.C.C. arts. 1928, 1934.
There are no genuine issues of material fact regarding formation of the contract.

Waiver
Parkway contends that even if the contract meets all formalities, the trial court erred by granting a partial summary judgment because Burger King impliedly waived their right to claim a breach of the insurance provisions.
The contracts states:
Certification of Insurance required by Paragraph 1 acceptable to the Owner shall be filed with the Owner prior to commencement of work. Failure to do so shall give Owner the option to terminate this Agreement. Under no circumstances shall payments be made by the Owner to the Contractor until such certificates are filed.
Certification of insurance was not filed with Burger King prior to commencement of work and Burger King did not exercise its option to terminate the contract due to that failure. Parkway claims they were *1127 paid before the certificate was issued, a matter in dispute. However, we do not find this to be a material issue which would warrant reversal of the summary judgment.
The certificate of insurance was issued to Burger King in Metairie from Dallas, Texas on September 16, 1988. The certificate named Parkway as the insured and did not list Burger King as an additional insured.
Parkway cites Leitz v. Lambert, 219 So.2d 2, 6 (La.App. 4th Cir.1969) which involved a similar dispute. Leitz held:
The contractor obtained a Certificate showing his insurance coverage and submitted it to the Parish. The Certificate contained the name of the insured and the type and number of each policy. Obviously it was accepted by the Parish as being in compliance with the contract as the evidence does not reveal any demands were made on the contractor for additional insurance but on the contrary reveals that work proceeded under the contract. It is now too late to raise the question of sufficiency of the insurance coverage.
This matter is distinguishable due to its factual circumstances. Myers' accident occurred prior to 6:00 a.m. on September 16, 1988 and the certificate was issued later that day. By the time Burger King had the notice assumed in Leitz, the insurable "occurrence" had taken place. Thus, Burger King could not have accepted the non-conforming certificate as "being in compliance" with the contract at the time of the accident.
Although the certificate was not given to Burger King prior to commencement of work as required by the contract, that does not preclude Burger King from raising a breach of a separate provision that Parkway name Burger King as an insured. The contract provided a remedy for the failure to provide the certificate timely: Burger King had the option to terminate the agreement; thus Burger King's failure to require a certificate of insurance prior to commencement of work could only have resulted in a waiver of the right to terminate the agreement.
If Burger King paid Parkway before they received the certificate of insurance as Parkway alleges, the only right Burger King waived was to withhold payment. The contractual obligation to name Burger King an insured is a separate obligation.
The parties agree that a waiver can only result from the intentional relinquishment of a known right. Southbend Contractors, Inc. v. Parish of Jefferson, 408 So.2d 1158, 1162 (La.App. 4th Cir.1981), writ denied, 413 So.2d 496 (La.1982). Burger King was unaware that it was not an insured until they were informed by Parkway on April 10, 1989. In a letter dated May 26, 1989, Burger King informed John Elmer of Parkway that it intended to enforce its rights based on the breach. Clearly, Burger King did not waive its right to claim damages for breach of contract before it had knowledge of the breach.

Civil Code Article 2004
Parkway claims that the insurance provisions of the contract are null under La.C.C. art. 2004 which states:
Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.
Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party.
Article 2004 does not apply. This matter does not involve an injury to Parkway or Burger King. Rather, we are concerned with a personal injury claim by a third party.
Parkway submits that where a party agrees to indemnify another party for its fault and there is a personal injury to a third person, the agreement is null. Such a rule would negate all liability policies. Ramirez v. Fair Grounds Corporation, 575 So.2d 811 (La.1991), cited by Parkway, is inapplicable. In Ramirez the lease which in advance released the defendant from all liability for damages suffered by the plaintiff was invalid under La.C.C. art. 2004. That is not the same as this matter whereby *1128 the parties allocate between themselves the risk of potential liability toward third parties.

Did the Claim "Arise From" Parkway's Operations?
The contract required Parkway to maintain insurance to protect Burger King from claims which "arise from" Parkway's operations. Parkway alleges that Myers' accident did not "arise from" its operations and the partial summary judgment for breach of the contract was erroneous. Parkway notes that the Myers sued Burger King in negligence and strict liability based on the negligent installation of the menu board. Parkway states that if their claim is valid the accident did not "arise from" work done by Parkway. However, John Elmer, Parkway's President, stated in his deposition that Parkway was working on the menu board when it fell on Myers. The "arising out of" language in the contract is sufficiently broad enough to cover this situation.
Parkway breached its contract with Burger King and is liable for the damages arising therefrom. Lopez, 495 So.2d at 378; Ordonez, 297 So.2d at 782.
The trial court properly granted Burger King's motion for partial summary judgment.

Attorney's Fees
Burger King claims the trial court erroneously denied its request for attorney's fees. It contends that if Parkway had insurance pursuant to its contract, the insurer would have defended Myers' main demand and Burger King would not have incurred attorney's fees and costs.
The contract does not contain a clause pertaining to recovery of attorney's fees.[2] As a general rule, attorney's fees are not allowed unless provided by statute or contract. Morvant v. Arnoult, 490 So.2d 549, 552 (La.App. 4th Cir.1986); Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). A breach of contract does not fall within one of the exceptions to this rule. Ogea v. Loffland Brothers, Company, 622 F.2d 186, 190 (5th Cir. 1980); Maloney v. Oak Builders Incorporated, 256 La. 85, 235 So.2d 386, 390 (1970). The parties were free to stipulate in the contract that attorney's fees would be due in the event of a breach.
The trial court properly denied Burger King's request for attorney's fees.

BURGER KING versus NATIONWIDE INDEMNITY
Burger King alleges that summary judgment in favor of Nationwide Indemnity was erroneous because: (1) Burger King is an "insured" under a policy of insurance issued by Nationwide Indemnity to Parkway; (2) coverage afforded by Nationwide Indemnity's policy extends to Burger King's net loss in excess of $25,000; and (3) Burger King has no other insurance applicable to this occurrence, with the exception of excess coverage above $2,000,000.

Is Burger King an "Insured"?
Burger King claims the umbrella liability policy issued by Nationwide Indemnity to Parkway automatically confers "insured" status on any entity that Nationwide Indemnity's named insured (Parkway) agreed in writing to have designated as insured.
Burger King's argument is based on the definition of "insured" in Nationwide Indemnity's policy which includes:
Anyone for whom you have agreed in writing to provide insurance such as is provided in this policy, but only for operations performed by you on your behalf, or facilities you own or use. (Emphasis added).
The contract obligated Parkway to provide:
[I]nsurance to protect the Owner [Burger King] and himself [Parkway] from claims which may arise from the Contractor's operations, whether such operations be by himself, any sub-contractor, anyone *1129 directly or indirectly employed by any of them, or by whose acts they may be liable. Such claims shall include but not be limited to the following:
Claims for damages because of bodily injury, occupational sickness or disease or death of his [Parkway's] employees.
This insurance shall be written for not less than limits of liability required by law, or $1,000,000 aggregate (single limit applicable to bodily injury and property damage combined) whichever is greater. The insurance shall include contractual liability insurance; products liability  completed operations liability insurance; and insurance to cover contractors' legal liability for acts of sub-contractors. Burger King Corporation and its subsidiaries, affiliated companies and parent company shall be named as an additional insured under this policy. (Bolded emphasis added).
Nationwide Mutual was Parkway's general liability insurer for claims up to $1,000,000.[3] Nationwide Indemnity was Parkway's commercial umbrella insurer for $4,000,000 above the insurance by Nationwide Mutual. Burger King claims that because it is an "insured" under Nationwide Indemnity's policy and there is no "underlying insurance" which applies to this accident, Nationwide Indemnity must provide coverage to Burger King for all sums (in excess of the retained limit of $25,000) for which Burger King may be cast in this lawsuit.
In granting Nationwide Indemnity's motion for summary judgment, the trial court listed the following reasons for judgment:
I do not find that the ... language in the contract to provide for coverage as required by law or $1,000,000, whichever is greater, constitutes an agreement in writing by Parkway Construction Company, Inc. to provide Burger King Corporation with `insurance such as is provided' in the policy issued by Nationwide Indemnity Insurance Company to Parkway Construction Company, Inc. Hence, Burger King Corporation is not an `insured' under the Nationwide Indemnity Company policy.
* * * * * *
This decision is based solely on the finding that Burger King Corporation is not an `insured' under the Nationwide Indemnity Insurance Company policy. It does not address or rule on any rights the various parties may have under the contract between Parkway Construction Company, Inc. and Burger King Corporation, the insurance coverage provided by Nationwide Indemnity Insurance Company under the policy issued to Parkway Construction Company, Inc. or the indemnity agreement Parkway Construction Company, Inc. and Nationwide Insurance Company and Nationwide Indemnity Insurance Company.
We find no error with the trial court's ruling. The insurance that Parkway was required to procure is not "insurance such as is provided" in Nationwide Indemnity's policy. The contract policy only required Parkway to procure up to $1,000,000 of primary insurance. Parkway never agreed to provide umbrella insurance to Burger King. Musgrove v. Southland Corporation, 898 F.2d 1041 (5th Cir.1990) addressed a situation virtually identical to this matter. In Musgrove two employees of Lake Charles Electric Company (LCE) were killed while performing electrical maintenance work at a Citgo Refinery pursuant to a contract between LCE and Citgo. The survivors sued Citgo and LCE, and Citgo settled with the survivors. Citgo then filed a third party complaint against LCE and its insurers, St. Paul Insurance Company and International Insurance Company.
LCE had a comprehensive general liability policy with St. Paul which provided coverage of $1,000,000 per occurrence. LCE also had an excess liability policy with International. Despite its contractual obligation LCE failed to name Citgo as an insured under either policy. On cross motions, *1130 for summary judgment, the district court entered judgment for Citgo, finding LCE had breached its contractual obligation, but dismissed Citgo's claims against St. Paul and International.
Citgo (like Burger King) maintained that immediately upon execution of its contract with LCE, it automatically became an insured under International's policy. The definition of "insured" in International's policy included:
Any person, organization, trustee or estate to whom or to which the named insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy.... (Bolded emphasis added).
Citgo further alleged that the threshold of the International excess liability policy "drops down" to cover losses under $1,000,000 in the event that the primary policy issued by St. Paul provided no coverage.
The Citgo-LCE contract obligated LCE to provide comprehensive general liability insurance of not less than $1,000,000 per occurrence for itself and Citgo. The U.S. Fifth Circuit held that because International's policy only covered losses in excess of $1,000,000, International's policy did not provide coverage required by the Citgo-LCE contract.
Although Musgrove involved an excess policy and the policy in question here is an umbrella policy, the same rationale applies. Nationwide Indemnity agreed to pay on behalf of Parkway claims "in excess" of the underlying limit or retained limit. Further, the policy required Parkway to maintain the commercial general liability policy with Nationwide Mutual which had a $1,000,000 limit.
Because Nationwide Indemnity's policy covers losses in excess of $1,000,000, the insurance required by Parkway-Burger King's contract (i.e., primary coverage of $1,000,000 or less) is not the type of insurance provided by Nationwide Indemnity's policy.
Gulf Oil Corporation v. Mobile Drilling Barge or Vessel Margaret, 441 F.Supp. 1 (E.D.La.1975), aff'd, 565 F.2d 958 (5th Cir. 1978), cited by Burger King, is not applicable because there the contractor was obligated to name the operator as an additional insured "in all of the general liability policies... required ... in the drilling contract," (which would include excess or umbrella coverage). Thus, it was undisputed that the contractor was required to obtain the insurance coverage in question.
Accordingly, Burger King was not an insured under Nationwide Indemnity's policy and summary judgment in favor of Nationwide Indemnity was proper.
Burger King's remaining assignments are moot.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Burger King's reply brief alluded to several issues pertaining to the summary judgment in favor of Nationwide Mutual.
[2] Burger King mistakenly relies on Ordonez in its claim for attorney's fees. The contract in Ordonez had an express provision for attorney's fees.
[3] Burger King admits that it is not an "insured" under Parkway's primary insurance by Nationwide Mutual since Parkway failed to have Burger King named as an insured and that policy does not contain an "automatic insured" provision.